151 F.Supp. 577 (1957)
ANDERSON MOTOR SERVICE, Inc., a corporation, Plaintiff,
v.
UNITED STATES of America, Defendant,
and
Interstate Commerce Commission et al., Intervening Defendants.
No. 10738(2).
United States District Court E. D. Missouri, E. D.
May 27, 1957.
*578 Gregory M. Rebman, of LaTourette & Rebman, St. Louis, Mo., for plaintiff.
Wayne H. Bigler, Jr., Asst. U. S. Atty., St. Louis, Mo., Howard Smith, Dept. of Justice, Washington, D. C., for the United States.
Leo H. Pou, Associate Gen. Counsel, I. C. C., Washington, D. C., for intervener Interstate Commerce Commission.
Paul Brown, of Heneghan, Roberts & Cole, St. Louis, Mo., and Homer Carpenter, Washington, D. C., for intervener Federal Express, Inc.
Before JOHNSEN, Circuit Judge, and MOORE and HARPER, District Judges.
HARPER, District Judge.
This is an action by Anderson Motor Service, Inc., to annul, set aside and enjoin an order of the Interstate Commerce Commission entered on September 30, 1955, granting to Federal Express, Inc., a motor carrier, authorization to purchase the interstate operating rights of another motor carrier, the S. & V. Company. The plaintiff also seeks the annulment of two commission orders denying petitions for reconsideration filed by the plaintiff and other protestants.
The case was heard by a court composed of three judges pursuant to Sections 2284 and 2321-2325, Title 28 U.S. C.A.
Orders of the Interstate Commerce Commission are reviewable in this court. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162. The functions of the reviewing court are strictly limited. The accepted rule is that if a commission order lies within the scope of a statute which the Commission is authorized to administer and enforce and if the order is based upon adequate findings, which in turn are supported by substantial evidence, the order may not be set aside by a court on review, even though the court might disagree with the Commission's conclusions or might consider them contrary to the weight of the evidence. Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541-547, 32 S.Ct. 108, 56 L.Ed. 308; Mississippi Valley Barge Line Co. v. U. S., 292 U.S. 282-286, 54 S.Ct. 692, 78 L. Ed. 1260; Rochester Telephone Corp. v. U. S., 307 U.S. 125-139, 59 S.Ct. 754, 83 L.Ed. 1147; Universal Camera Corp. v. National Labor Relations Board, 340 U. S. 474-488, 71 S.Ct. 456, 95 L.Ed. 456.
With respect to such limitations, the Supreme Court in Rochester Telephone Corp. v. U. S., supra, 307 U.S. loc.cit. 140, 59 S.Ct. loc.cit. 762, said:
"Only questions affecting constitutional power, statutory authority and the basic prerequisites of proof can be raised. If these legal tests *579 are satisfied, the Commission's orders become incontestable."
In the Mississippi Valley Barge Line case, supra, 292 U.S. loc. cit. 286-287, 54 S.Ct. loc.cit. 694, the Supreme Court said:
"The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body."
The rule of administrative finality has application to Commission decisions in purchase and merger proceedings under Section 5, Title 49 U.S.C.A. Virginia State Lines v. U. S., D.C., 48 F.Supp. 79, 82; O. C. Wiley & Sons v. U. S., D.C., 85 F.Supp. 542, 545, affirmed 338 U.S. 902, 70 S.Ct. 308, 94 L.Ed. 554; McLean Trucking Co. v. U. S., 321 U.S. 67, 87-88, 64 S.Ct. 370, 88 L.Ed. 544.
The proceeding before the Commission was instituted by Federal pursuant to the provisions of Section 5(2), Title 49 U.S.C.A. (The Interstate Commerce Act). This section in general terms permits the unification, merger and acquisition of control by one carrier subject to the Interstate Commerce Act, of the ownership, management and operation of the properties of another carrier. It further provides that before the Commission's approval may be had on any application filed pursuant to its terms, the Commission shall find that the proposed transaction "is within the scope of subparagraph (a) and will be consistent with the public interest."
Applicants before the Commission, both vendee and vendor, filed an application on December 1, 1952, for Federal to purchase the interstate operating rights of S. & V., and a hearing was subsequently held before an Examiner of the Commission on April 28, 1953. Anderson and eighteen other motor carriers appeared in opposition. The Examiner in a report filed March 16, 1954, found that the proposed purchase would be consistent with the public interest and that it should be approved and authorized by the Commission.
Upon consideration of exceptions filed by Anderson and others, and replies thereto by the applicants, the Commission, Division 4 (comprised of Commissioners Mahaffie, Johnson and Cross) decided, on December 13, 1954, that the application should be denied, Commissioner Mahaffie dissenting. The applicants petitioned for reconsideration and reversal of the Division's decision, Anderson and others replied, and on September 30, 1955, the Commission, Division 4 (then composed of Commissioners Johnson, Elliott and Tuggle), issued its report and order approving and authorizing the proposed purchase and acquisition of control, Commissioner Johnson dissenting. Division 4, in reconsidering its order of December 13, 1954, did so on the record as made initially at the hearing held in St. Louis, Missouri, beginning April 28, 1954.
Plaintiff filed a petition for reconsideration and the Commission on November 8, 1955, stayed the order of September 30, 1955. The petition for reconsideration was denied by the Commission's order of February 7, 1956, whereupon plaintiff filed a second and successive petition for reconsideration on March 16, 1956, which petition was denied, for the reason that, being a successive petition, it was filed in contravention of Rule 101(f) of the Commission's General Rules of Practice, 49 U.S.C.A.Appendix. Two days after this action was begun on May 17, 1956, the intervenor consummated the transaction, as approved by the Commission, and paid over to the vendor the agreed purchase price of $30,000.
Plaintiff directs the court's attention to the fact that the composition of Division 4 of the Commission was changed between December 13, 1954, the date of the first order, and September 30, 1955, the date of the order assailed. The Commission has the statutory authority to change the personnel of a Division whenever it becomes necessary. Section 17(1) of the Interstate Commerce Act (49 U.S.C.A. § 17(1). This authority may be exercised during the time a matter *580 is pending before a Division. The court in Twin City Milk Producers Ass'n v. McNutt, 122 F.2d 564, loc.cit. 569, said:
"It is well settled that a change of personnel in an administrative agency or tribunal during the course of a hearing, or at any time before the issuance of a final order on the hearing, does not invalidate the order."
In the present case two of the three commissioners who participated in the order of December 13, 1954, were superseded by other commissioners who, after considering the entire record of the proceedings, joined with the remaining commissioner, in the submission of the order of September 30, 1955. This procedure is perfectly proper.
As previously indicated, Section 5(2) of Title 49 U.S.C.A. permits of an acquisition of control by one carrier of the operating rights of another only upon approval and authorization of the Commission. In approving and authorizing such a transaction, the Commission must find that the proposed transaction is consistent with the public interest. One of the elements which the Commission is required to give consideration to in determining the question of consistency with the public interest, is that the Commission determine the effect of the proposed transaction upon adequate transportation service to the public. A further requirement in all proceedings before the Commission, including those under Section 5(2) is found in the declaration of the National Transportation Policy, which declaration precedes Section 301, Title 49 U.S.C.A. This declaration of policy provides that the Commission in administering the act do so "to promote safe, adequate, economical and efficient service and foster sound economical conditions in transportation and among the several carriers."
The Commission's ultimate finding that Federal's purchase of the interstate operating rights of S. & V. will be consistent with the public interest is based upon numerous subsidiary findings of fact set forth in the two reports of Division 4, dated December 13, 1954, and September 30, 1955. The latter states that, "The prior report sets forth the pertinent facts, and they will be restated only to the extent necessary for clarity." Without restating all the findings set forth in the two reports, the following findings of fact may be fairly said to be supported by substantial evidence, and adequate to sustain the ultimate finding of the Commission.
Federal operates as a motor common carrier of general commodities, over routes, principally between Detroit, Michigan, and Evansville, Indiana, via Indianapolis, Terre Haute and Vincennes, Indiana, and over a network of routes extending east and south of that route to Cleveland, Youngstown, Columbus and Dayton, Ohio, Louisville, Kentucky, and Bloomington, Indiana. S. & V. is also a motor common carrier of general commodities, and operates over a route between Vincennes, Indiana, and St. Louis, serving all intermediate points. Anderson is engaged in extensive operations in the area served by Federal and S. & V., operating principally between St. Louis, Cleveland and Akron, and between Pendleton, Indiana, and Akron, serving the intermediate points of Indianapolis, Fort Wayne and Toledo.
There is no question as to Federal's financial ability to pay the purchase price ($30,000) for S. & V.'s operating rights or as to its ability to conduct the unified operations.
The routes of Federal and S. & V. connect at Vincennes, and are complementary. Federal handles traffic destined to S. & V.'s territory, which it must interline with connecting carriers. In the six-month period beginning April 1, 1952, S. & V. transported 5,129 interstate shipments, weighing 1,880,808 pounds, of which 1,399 shipments, or 27.3% were interlined with 65 connecting carriers. The shipments originated at or were destined to 249 points, in 31 states, including at least 35 points on the routes of Federal Express. Federal Express *581 had interlined to connecting carriers traffic destined to points also served by S. & V. During the last three months of 1952, Federal Express transferred at Indianapolis 87 shipments destined to St. Louis, weighing 187,977 pounds.
The Commission specifically found that the opposing carriers would be able to meet the competition which might result from the transaction "without undue difficulty." The Commission found that of the original 19 protestants, only 4 had received traffic from S. & V. during a representative six-month period; the aggregate being 4,445 pounds. The Commission further found that only two of the original 19 protestants received, during a representative three-month period, interline traffic from Federal Express destined to points also served by S. & V., the total revenue of such traffic being only $57.97.
The Commission made a number of subsidiary findings relative to the financial strength of protestants. With three exceptions, the operating revenues of the 19 protestants increased in 1952 over those for 1951. The three exceptions showed an aggregate decline of approximately 2.8 per cent in operating revenues for 1952 as compared with 1951. Total operating revenues of the 19 original protestants for 1952 increased approximately $6,000,000 over 1951. Anderson had operating revenues of $1,915,000 in 1951 and $2,051,000 in 1952, with operating ratios of 83.1 and 80 percent, respectively. The Commission concluded that "this evidence demonstrates an increasing volume and a growth in protestants' financial strength which should be sufficient to allow them to make the necessary adjustments to meet the competition which will result from the transaction without undue difficulty." A similar test was applied by the Commission in Merchants Motor Freight, Inc.Purchase Bridgeways, 60 M.C.C. 229 (1954), where the record showed financial growth of the protestants and that the operating ratio of protestants as a group had improved from 96.8 in 1946 to 93.3 in 1950. The Commission approved the purchase on the grounds that, p. 280, "This evidence demonstrates growth in protestants' motor transportation and financial strength sufficient to make the necessary adjustments and meet the competition which will result from these transactions without undue difficulty."
The Commission found that an improved and more efficient service to the public would result from the proposed transaction. The evidence shows that the president of the S. & V. Company was a woman who had taken over that position after impairment of her husband's health. Due to illness of her own she desired to be relieved of the burden of operating the S. & V. Company. Operations during 1952 were conducted at a loss of $6,928. The Commission further found that the substitution of the single-line service for the joint-line service would eliminate interchange delays and thereby permit a faster and more efficient service to the public.
All of the findings by the Commission are supported by substantial evidence, and these findings, taken as a whole, are adequate to sustain the ultimate conclusion of the Commission that the proposed transaction was consistent with the public interest.
Plaintiff Anderson contends that the Commission's order of September 30, 1955, is unlawful, arbitrary, capricious and void "because it is at complete variance with other findings and orders of the Commission based upon similar facts." It is alleged that the Commission has departed from a line of administrative precedents, consistently adhered to, to the effect that when the Commission finds that a new service would result from the acquisition by one carrier of the operating rights of another, the Commission must further find a "public need" for such service. The courts have many times held that the findings of the Commission may not be attacked because they are inconsistent with findings made in other cases. Georgia Public Service Commission v. U. S., 283 U.S. 765, 775, 51 S.Ct. 619, 75 L.Ed. 1397; Virginian *582 Ry. Co. v. U. S., 272 U.S. 658, 663, 47 S.Ct. 222, 71 L.Ed. 463; Western Paper Makers' Chemical Co. v. U. S., 271 U.S. 268, 271, 46 S.Ct. 500, 70 L.Ed. 941.
It is not entirely manifest that the Commission in the instant case departed from carefully enunciated prior principles. The law is clear, however, that the Interstate Commerce Commission is not required to make findings of public need, inadequacy of existing service, or that a new service was not created by an acquisition proceeding involving only motor carriers.
The standard to be applied is "consistent with the public interest." That phrase was construéd by the U. S Court of Appeals for the Ninth Circuit in Pacific Power & Light Co. v. Federal Power Commission, 111 F.2d 1014. The court, loc.cit. 1016, said:
"We think the Commission ascribes a meaning to the statute not borne out by its language. The section provides that `after notice and opportunity for hearing, if the Commission finds that the proposed disposition, consolidation, acquisition, or control will be consistent with the public interest, it shall approve the same.' The phrase `consistent with the public interest' does not connote a public benefit to be derived or suggest the idea of a promotion of the public interest. The thought conveyed is merely one of compatibility. Congress resorted to this language rather than to the use of the stock term `public convenience or necessity', or to such phrases as `in furtherance of' or `will promote the public interest' used in its interstate commerce legislation (later considered); and the language employed ought to be construed to mean no more than it says. It is enough if the applicants show that the proposed merger is compatible with the public interest. The Commission, as a condition of its approval, may not impose a more burdensome requirement in the way of proof than that prescribed by law."
The court noted in the Pacific Power & Light case that the statutory standard of the Federal Power Act, 16 U.S.C.A. § 791a et seq., which it was there interpreting, differed from the standard prescribed by Congress for the Interstate Commerce Commission under Section 5 of the Interstate Commerce Act. At that time, the Interstate Commerce Act required a showing that the proposed acquisition would "promote the public interest", a provision since changed to precisely the language utilized in the Federal Power Act and interpreted by the court in the Pacific Power & Light case.
In M. & M. Transportation Company v. U. S., D.C., 128 F.Supp. 296, a three-judge case, the court held that the Interstate Commerce Commission in an acquisition proceeding involving only motor carriers was not required to make findings of public need, inadequacy of existing service, or that a new service was not created by the acquisition. The court, loc.cit. 299, said:
"* * * by requiring ultimate findings of `public advantage' or `public convenience and necessity' to support similar transactions, Congress by implication has indicated that these findings need not be made in an acquisition proceeding involving only motor carriers. The Supreme Court has several times mentioned other factors which should be reflected in the Commission's basic findings in a § 5 proceeding. New York Central Securities Corp. v. U. S., 1932, 287 U.S. 12, 23, 25, 53 S.Ct. 45, 47, 48, 77 L.Ed. 138 (`economy and efficiency in operation'; `adequacy of transportation service'); McLean Trucking Co. v. U. S., 1944, 321 U.S. 67, 86-88, 64 S.Ct. 370, 88 L.Ed. 544 (improving adequacy of service, but Commission need not find that existing service is inadequate; Commission should consider diminution of competition)."
Plaintiff contends that the findings set forth in the report of September 30, 1955, are not in accordance with the requirements of Section 8 of the Administrative *583 Procedure Act, 5 U.S.C.A. § 1007. That section requires that decisions of an administrative body such as the Interstate Commerce Commission shall include a statement of "findings and conclusions, as well as the reasons or basis therefor, upon all material issues of fact, law, or discretion presented on the record."
In this regard, the decision of the three-judge court in Capital Transit v. U. S., D.C., 97 F.Supp. 614, loc.cit. 621, had this to say:
"* * * And the Administrative Procedure Act does not require detailed findings of every subsidiary evidentiary fact. So long as the agency makes amply clear the factual basis upon which it has proceeded, there can be no ground for complaint * * *."
The Commission in the instant case has issued two reports containing findings that are clear and definite. These findings are supported by substantial evidence. There is not lacking any element, either as to findings of fact or considerations of policy, necessary to support the present order of the Commission.
Plaintiff's contention of a violation of Section 7 of the Administrative Procedure Act, 5 U.S.C.A. § 1006, is without merit. Plaintiff argues that the Commission's finding that "The record fails to indicate any dearth of traffic", improperly shifts the burden of proof to the protesting carriers, contrary to the provision in Section 7(c) that "the proponent of a rule or order shall have the burden of proof." In using the complained-of language, the Commission did not relieve the applicants of their burden of proving that the proposed purchase would be consistent with the public interest. The Commission had before it specific evidence showing the operating revenues and the operating ratios of each of the protesting carriers for the years 1950, 1951 and 1952. This evidence indicated that virtually all of the protesting carriers, including plaintiff Anderson, were in an increasingly healthy financial condition. In stating that "the record fails to indicate any dearth of traffic", the Commission was merely utilizing negative language to say that the record shows that there is sufficient or adequate traffic to warrant the belief that the protestants will be able to maintain their service despite any possible loss of traffic to Federal upon consummation of the proposed purchase.
Plaintiff also contends that the Commission's report and order of September 30, 1955, are unlawful and void because they "will deprive plaintiff of its property without due process of law contrary to the rights of plaintiff as guaranteed by the Fifth Amendment to the Constitution." The mere fact that plaintiff may possibly suffer some pecuniary loss as a result of approval of the proposed purchase is not sufficient to show deprivation of property in violation of the Fifth Amendment. Plaintiff has no right by virtue of its certificate to the exclusive use of the highways over which it is authorized to operate. Section 207(b) of the Act specifically states: "No certificate issued under this part shall confer any proprietary or property rights in the use of the public highways." 49 U.S.C.A. § 307(b). The three-judge court in Capital Transit Co. v. U. S., D.C., 97 F.Supp. 614, loc.cit. 620, stated: "* * * under the Motor Carrier Act, 49 U.S.C.A. § 301 et seq., there is no vested right in the public highways or in any transportation business conducted on those highways." See also, American Trucking Ass'ns v. U. S., 344 U.S. 298, 322, 73 S.Ct. 307, 97 L.Ed. 337.
A judgment will be entered dismissing the complaint.