**ALABAMA HIGHWAY EXPRESS, INC.,**
et al., Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission,
Defendants,

and

**Deaton Truck Line, Inc.,** Intervening Defendant.

**Civ. A. No. 65–112.**

United States District Court
N. D. Alabama, S. D.

May 21, 1965.

Maurice F. Bishop and John P. Carlton, Bishop & Carlton, Birmingham, Ala., and James W. Wrape and Robert E. Joyner, Wrape & Hernley, Memphis, Tenn., and Washington, D. C., for plaintiffs.

William H. Orrick, Jr., Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Macon L. Weaver, U. S. Atty., Birmingham, Ala., for defendant United States.

Robert W. Ginnane, Gen. Counsel, and Robert S. Burk, Atty., I. C. C., Washington, D. C., for defendant Interstate Commerce Commission.

Mark L. Taliaferro, Moore, Thomas, Taliaferro, Forman & Burr, Birmingham, Ala., and A. Alvis Layne and William A. Chesnutt, Washington, D. C., for intervening defendant Deaton Truck Line.

Before GEWIN, Circuit Judge, and LYNNE and GROOMS, District Judges.

LYNNE, District Judge.

Proceeding under 28 U.S.C.A. §§ 1336, 1398, 2284, and 2321–2325 and 5 U.S.C.A. § 1009, plaintiffs, six common carriers by motor vehicle, brought this action against the Interstate Commerce Commission (Commission) and the United States [1] to set aside an order of the Commission, which became administratively final on January 25, 1965, approving the joint application of Deaton Truck Line, Inc.

---

1. Deaton Truck Line, Inc. was permitted to intervene as a defendant under the authority of 28 U.S.C.A. § 2323 and Rule 4, Fed.R.Civ.P.

(Deaton) and Edward Darby Lavendar, an individual doing business as Lambert-Marks Express (Lavendar) seeking authority under Section 5 of the Interstate Commerce Act (Act) for the purchase by Deaton of a portion of the certificated operating rights of Lavendar.

Deaton operates as a motor common carrier of general commodities over irregular routes between Atlanta, Georgia, on the one hand, and Talladega, Alabama, on the other, and between Birmingham, Alabama, and points within 65 miles thereof (including Talladega), on the one hand and New Orleans, Louisiana, and points in Mississippi, on the other. By tacking these two authorities at Talladega, Deaton can operate between Atlanta, Georgia, and points in Mississippi. Deaton also holds authority to transport numerous specific commodities from, to and between points in several southeastern states and Memphis, Tennessee, where it maintains terminal facilities.

Lavendar holds three certificates of public convenience and necessity to operate as a motor common carrier of general commodities over regular routes, insofar as pertinent here, between Memphis, Tennessee, and Savage, Mississippi, over U. S. Highway 61, Tennessee Highway 14A and Mississippi Highway 301, serving the intermediate and off-route points of Eudora and Arkabutla, Mississippi, and the off-route points of Banks, Prichard and Nesbit, Mississippi.

Deaton sought authority to buy, and Lavendar to sell, the operating authority between Memphis and Savage. Acquisition of this authority would permit Deaton, by tacking to its existing authorities, to transport general commodities in single-line service between Memphis and Atlanta and between Memphis and the Birmingham area, in competition with the twelve motor carriers who appeared as protestants in the proceedings before the Commission, six of whom are plaintiffs here.

Since the latter part of 1959 in order to gain entry into Memphis, an important gateway for general commodity shipments, Deaton interlined with Lavendar at Nesbit, Mississippi. With this jointline service Lavendar utilized his own tractors and drivers between Memphis and Nesbit and such interlined shipments moved over U. S. Highway 51.

This severe capsulation of the underlying facts serves as a backdrop for the restricted contentions of counsel for plaintiffs in oral argument, to which we now turn and respond.

1. It is insisted that the failure of the Commission to follow, distinguish or discuss two prior proceedings involving applications of Deaton to purchase operating rights of other carriers to gain singleline general commodity access to Memphis [2] resulted in findings and conclusions which were arbitrary and capricious and constituted an abuse of discretion within the contemplation of the Administrative Procedure Act, 5 U.S.C.A. § 1009 (e).[3]

2. Deaton Truck Line, Inc.—Purchase (Portion)—Capital Freight Lines, Inc., 70 M.C.C. 365, Deaton Truck Line, Inc.—Purchase (Portion)—Magnolia Truck Line, Inc., Docket MC–F–7608.

3. "§ 1009 *Judicial review of agency action*
"Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion.
    \*      \*      \*      \*      \*
"(e) So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 1006 and 1007 of this title or otherwise reviewed

To discuss the dissimilarities between the records in Capital and Magnolia and the record of the proceedings now under review in search of a distinction would unduly extend this opinion. It is neither the duty nor the right of this court " * * * to enquire into the soundness of the Commission's reasoning, the wisdom of its decisions, *or the consistency of its conclusion with those reached in similar cases.*" (Emphasis supplied, Georgia Public Service Commission v. United States, 283 U.S. 765, 775, 51 S.Ct. 619, 623, 75 L.Ed. 1397 (1931).) [4]

2. It is insisted that by according controlling weight to prior interline activities of vendor and vendee the Commission was guilty of arbitrary action.

As this court observed in American Trucking Ass'ns v. United States, 101 F.Supp. 710, 726 (N.D.Ala.1951): "It is the task of the Commission and not of the courts to pass upon the weight and credibility of the evidence." [5]

3. It is next insisted that approval by the Commission of the instant transaction which would result in a completely new service, radically different from any contemplated in the original grants of authority, without any evidence of or finding as to public convenience and necessity was arbitrary and capricious.

In reviewing an order of the Commission authorizing the consolidation of several motor carriers under Section 5(2) of the Act, the Supreme Court in McLean Trucking Co. v. United States, 321 U.S. 67, 87, 64 S.Ct. 370, 381, 88 L. Ed. 544 (1944) observed: "If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order." Contrary to the views which plaintiffs urge upon this court, the Commission expressly found that a new service would not emerge from Deaton's acquisition of Lavendar's authority.[6]

on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error."

4. The following quotation is lifted from the opinion in Anderson Motor Service v. United States, 151 F.Supp. 577 (E.D. Mo.1957):
"The courts have many times held that the findings of the Commission may not be attacked because they are inconsistent with findings made in other cases. (Citations omitted.)"

5. Plaintiffs' criticism of the manner in which the Commission weighed the evidence in these proceedings is fully answered by the following from Virginia Stage Lines v. United States, 48 F.Supp. 79, 83 (W.D.Va.1942):
"The function of 'weighing' the evidence, therefore, remains peculiarly one for the Commission 'appointed by law and informed by experience', and not for the courts. (Citations omitted.) This is in accord with the realization that the regulation of transportation involves various

economic factors and the exercise of an empirical judgment, since 'The stuff of the process is fluid and changing— the resultant of factors that must be valued as well as weighed. Congress has therefore delegated the enforcement of transportation policy to a permanent expert body and has charged it with the duty of being responsive to the dynamic character of transportation problems.' (Citations omitted.)"
Accord: Merchants Warehouse Co. v. United States, 283 U.S. 501, 51 S.Ct. 505, 75 L.Ed. 1227; Loving v. United States, D.C., 32 F.Supp. 464, affirmed 310 U.S. 609, 60 S.Ct. 898, 84 L.Ed. 1387; United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971; Lang Transportation Co. v. United States, D.C., 75 F.Supp. 915; Hanna Furnace Corp. v. United States, D.C., 53 F.Supp. 341, affirmed per curiam 323 U.S. 667, 65 S.Ct. 41, 89 L.Ed. 543

6. In his report and order the hearing examiner found, and such finding was adopted by the Commission:
"It is clear from the evidence that vendor has performed transportation under his rights continuously and to a degree commensurate with his abilities and the demands for his services. Moreover, vendor and vendee have interchanged a substantial amount of traffic at Nesbit,

■ This dispositive finding of fact is supported by substantial evidence in the record.[7]

4. It was further insisted that in converting the regular-route authority being purchased into irregular-route authority without notice to Deaton's competitors who will obviously be affected thereby and without a showing that such action is warranted in the public interest, the Commission acted arbitrarily and capriciously.

[7] This contention stems from the Commission's requirement of a modification of vendor's certificate, as a condition precedent to the consummation of the transaction, by re-describing Lavendar's authority in irregular-route terms. The source of its power to do so is to be found in the statute. 49 U.S.C.A. § 5(2) (b).[8]

and it is well established that where such interchange has occurred in the past, the single line service which would result from unification of the rights would not be a wholly new service. See Transcon Lines—Purchase—B&M Exp., Inc., 75 M.C.C. 693; Jones—Control & Merger—Clifford, 85 M.C.C. 603." No. MC–F–8395, Sheet 11 of Examiner's Report.

7. In Campus Travel, Inc. v. United States, 224 F.Supp. 146 (S.D.N.Y.1963), the court stated:
"* * * 'substantial evidence' may well support two conflicting points of view. If we were to say that only one position in any given case could be supported by 'substantial evidence', we would be depriving the Commission of the discretion afforded to it by law, and we would, in effect, be reviewing its determinations to see if the 'correct' result had been reached. This we cannot and will not do."

8. Sections 5(2) (a) (i), 5(2) (b), and 5(2) (c), 49 U.S.C.A. provide, in pertinent part, respectively as follows:
Section 5(2) "(a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—
"(i) for two or more carriers to consolidate or merge their properties or franchises, or any part thereof, into one corporation for the ownership, management, and operation of the properties theretofore in separate ownership; or for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another; or for any carrier, or two or more carriers jointly, to acquire control of another through ownership of its stock or otherwise; or for a person which is not a carrier to acquire control of two or more carriers through ownership of their stock or otherwise; or for a person which is not a carrier and which has control of one or more carriers to acquire control of another carrier through ownership of its stock or otherwise; or
* * * * *
"(b) Whenever a transaction is proposed under subdivision (a) of this paragraph, the carrier or carriers or person seeking authority therefor shall present an application to the Commission, and thereupon the Commission shall notify the Governor of each State in which any part of the properties of the carriers involved in the proposed transaction is situated, and also such carriers and the applicant or applicants (and, in case carriers by motor vehicle are involved, the persons specified in section 305(e) of this title), and shall afford reasonable opportunity for interested parties to be heard. If the Commission shall consider it necessary in order to determine whether the findings specified below may properly be made, it shall set said application for public hearing; and a public hearing shall be held in all cases where carriers by railroad are involved unless the Commission determines that a public hearing is not necessary in the public interest. If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subdivision (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable: * * *
"(c) In passing upon any proposed transaction under the provisions of this paragraph, the Commission shall give weight to the following considerations, among others: (1) The effect of the proposed transaction upon adequate transportation service to the public; (2) the effect upon the public interest of the inclusion, or failure to include, other railroads in the territory involved in the proposed transaction;

As the Supreme Court has pointed out, at the time of approval of a section 5(2) application, the Commission has the power to impose any condition on the certificate to be issued to the vendee which the "Commission reasonably deems * * * useful in protecting competition, or for other statutory purposes * * *." United States v. Rock Island Company, 340 U.S. 419, 431, 71 S.Ct. 382, 389, 95 L.Ed. 391 (1951). Undeniably, the Commission has authority to classify common carrier service as regular and irregular route, and these distinctions are appropriate and recognized under well settled principles of transportation law.[9]

5. Cogently advanced in brief and on oral argument is plaintiff's contention that, by failing to note that this transaction is a classic example of trafficking in operating rights, which it has in the past refused to approve and condone, the Commission's action was arbitrary and capricious.

It is clear that Lavendar's certificate was not dormant. There is no evidence in the record that Deaton influenced Lavendar's acquisition of such certificate or his decision to grant an option to Deaton for its purchase. We are persuaded that no legitimate inference may be drawn from the evidence in this record that the existence of such option in some manner tainted the interline operations of Deaton and Lavendar.[10]

6. Finally, it is urged that the refusal of the Commission to restrict the operating rights to be acquired by Deaton to preclude transportation operations between Nesbit, Mississippi, and Memphis, Tennessee, over U. S. Highway 51, in view of the fact that such operations were unauthorized under Lavendar's Sub-No. 3 certificate, was arbitrary and capricious.

The short answer to this contention is that the Commission found that such operations were in fact authorized.[11] Here we have an interpretation placed by the Commission upon a certifi-

---

(3) the total fixed charges resulting from the proposed transaction; and (4) the interest of the carrier employees affected."

9. United States v. Maher, 307 U.S. 148, 59 S.Ct. 768, 83 L.Ed. 1162 (1939); United States v. Carolina Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 86 L.Ed. 971 (1942).

10. In rejecting the various contentions of protestants that it was being requested to sanction the acquisition by Deaton of a certificate held by Lavendar merely for the purpose of speculative barter and sale, the Commission had before it evidence that the certificate in question was issued to Lavendar June 12, 1959; that such certificate did not authorize Lavendar to serve Hernando, Mississippi, the point in which he was primarily interested; that although Lavendar has always intended to operate, and has operated under the authority of his certificate to the extent traffic has been available, he quickly concluded that he could not conduct a profitable operation thereunder and on August 3, 1959, he granted Deaton an option to purchase such certificate; that such option did not

threaten the independent existence of Lavendar, but, to the contrary, it assured continuation of interline service with Deaton resulting in movement of substantial traffic to the mutual benefit of the participating carriers and the shipping public, and that Deaton had nothing to do with Lavendar's acquisition of such certificate nor his decision to offer it for sale to Deaton.

11. The Commission specifically ruled on this argument as follows:

"*It further appearing*, That the interchange of traffic at authorized off-route points is lawful (Compare National Transp. Co.—Purchase—North Bradford Transp., 65 M.C.C. 545, 70 M.C.C. 55), and that substantially all of the non-local traffic moving under the considered regular-route authority has been interchanged at Nesbit, Miss., an authorized off-route point adjacent to but not on U.S. Highway 51;

"*It further appearing*, That all traffic interchanged at Nesbit is transported by vendor over U.S. Highway 51 to or from Memphis, Tenn., a terminal point on the considered regular route, that operations over the shortest possible highways between Nesbit and the considered

cate of its own creation. On this record we are bound by that interpretation.[12]

Having canvassed the "whole record" in obedience to the command of the Administrative Procedure Act[13] we are of the opinion that the order of the Commission rests upon adequate findings[14] supported by substantial evidence.

The order of the Commission is affirmed. An appropriate judgment will be prepared and entered dismissing the complaint with prejudice.

---

regular route would require the use of line haul equipment in whole or in substantial part over one of two secondary roads, the shortest of which is partially unpaved and the other requiring an operation not significantly shorter than vendor's operation over U.S. Highway 51 between Nesbit and Memphis, that in the circumstances presented the shortest practicable highway between Nesbit and the considered regular route is U.S. Highway 51, and that vendor has performed lawful off-route service in accord with National Transp. Co.—Purchase—North Bradford Transp., supra, and Ferguson Frt. Lines, Inc., Modification of Certificate, 53 M.C.C. 91, 61 M.C.C. 87, 62 M.C.C. 261." (Sheet 2, Commission Order, appendix II to Complaint.)

12. As this court had occasion to point out in Malone Freight Lines v. United States, 107 F.Supp. 946 (N.D.Ala.1952), "The scope of our review is necessarily confined to the interpretation placed by the Commission upon a certificate of its own creation. We are bound by that interpretation unless we are persuaded that it was capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law. It is beyond our province to consider 'the soundness of the reasoning by which its conclusions were reached'". (Footnotes omitted.)

13. 5 U.S.C.A. § 1001 et seq.

14. We adopt the clear opinion of the court in M. & M. Transportation Co. v. United States, 128 F.Supp. 296 (D.Mass.1955): "The courts have continually asserted that the discretion of the Commission in a § 5 proceeding is sweeping, Congress intending that the Commission exercise its expert knowledge in assuring consistency with the public interest, and the exercise of this discretion will not

be disturbed if the Commission's findings are adequate in view of the statutory requirements. (Citations omitted.)

\* \* \* \* \*

"The nature of the required basic findings is in part stated, in part suggested, by the statute. Section 5(2) (c) prescribes that the Commission should give weight to, among other considerations, '(1) The effect of the proposed transaction upon adequate transportation service to the public; \* \* \* (3) the total fixed charges resulting from the proposed transaction; and (4) the interest of the carrier employees affected.' And by requiring ultimate findings of 'public advantage' or 'public convenience and necessity' to support similar transactions, Congress by implication has indicated that these findings need not be made in an acquisition proceeding involving only motor carriers. The Supreme Court has several times mentioned other factors which should be reflected in the Commission's basic findings in a § 5 proceeding. New York Central Securities Corp. v. United States, 1932, 287 U.S. 12, 23, 25, 53 S.Ct. 45, 47, 48, 77 L.Ed. 138 ('economy and efficiency in operation'; 'adequacy of transportation service'); McLean Trucking Co. v. United States, 1944, 321 U.S. 67, 86–88, 64 S.Ct. 370, 88 L.Ed. 544 (improving adequacy of service, but Commission need not find that existing service is inadequate; Commission should consider diminution of competition)."

With respect to the adequacy of findings of fact by the Commission generally this court observed in American Trucking Associations v. United States, 101 F.Supp. 710 (N.D.Ala.1951) at page 724: "The courts have never exacted of it a legalistic formalism in such findings but have recognized that they may be 'interwoven' with its discussion of the evidence, relating it to the contentions of the parties and its own ultimate conclusions. (Footnote 26 omitted.)"