ATLANTIC COAST LINE RAILROAD
COMPANY et al., Plaintiffs,

v.

UNITED STATES of America and In-
terstate Commerce Commission,
Defendants.

No. 65 C 1999.

United States District Court
N. D. Illinois, E. D.

Dec. 27, 1966.

**550**

William J. O'Brien, Jr. and John H. Doeringer, Donald R. Sterling, Chicago, Ill., Charles B. Evans, Jacksonville, Fla., John C. Ashton, Jr., John E. McCullough, St. Louis, Mo., for plaintiffs.

Bruce E. Brown, Chicago, Ill., W. Graham Claytor, Jr., and James A. Bistline and Peter S. Craig, Washington, D. C., for intervening plaintiffs.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., Donald F. Turner, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Robert W. Ginnane, Gen. Counsel, and Leonard S. Goodman, Asst. Gen. Counsel, I. C. C., Washington, D. C., for defendants.

Stuart B. Bradley and Bradley, Eaton, Jackman & McGovern, Chicago, Ill., J. Raymond Clark and Samuel H. Moerman and La Roe, Winn & Moerman, Washington, D. C., T. Randolph Buck, Louisville, Ky., I. T. Cohen, Guy H. Postell, Atlanta, Ga., K. Edward Wolcott, Jeffersonville, Ind., for intervening defendants.

## MEMORANDUM OPINION

Before KILEY, Circuit Judge, and PERRY and PARSONS, District Judges.

PERRY, District Judge.

This action is brought by plaintiff railroads under the provisions of 28 U.S.C. Sections 1336, 1398, 2284 and 2321–2325, inclusive, and Section 10 of the Administrative Procedure Act, 5 U.S.C. Section 1009, to set aside and enjoin (a) orders of the Interstate Commerce Commission in a proceeding known as Docket MC–F–8663, TTC Corporation —Purchase—Terminal Transport Co., Inc. and in a related proceeding, Finance Docket 23010, TTC Corporation—Securities, both decided June 30, 1965, and (b) the Commission's supplemental order of November 12, 1965, which denied reconsideration.

The principal offices of two of the plaintiffs (Illinois Central Railroad Company and Chicago, Burlington & Quincy Railroad Company) are located in the City of Chicago, Illinois, within the jurisdiction of this court.

American Commercial Barge Line Company—now American Commercial Lines, Inc.—(American), a common carrier by water, and Terminal Transport Company, Inc., (Transport), a common carrier by motor vehicle, filed their joint application on January 28, 1964, for an order under Section 5 of the Interstate Commerce Act (a) authorizing TTC Corporation, a to-be-formed wholly owned subsidiary of American, to purchase all of Transport's assets, operating rights

and business as a going concern, and to assume certain of Transport's liabilities and obligations; and (b) authorizing American under Section 5 to acquire control of Transport's operating rights and property and indirect control of Johnson Freight Lines Company, Inc. (Johnson), the wholly owned motor carrier subsidiary of Transport, through purchase of capital stock to be issued by TTC.

Contained in the Foreword of the Application appears the statement that—

"American Commercial Barge Line Company's interest in the assets of transferor (Transport) is for long-range investment purposes. The business of transferee (TTC) will be conducted as a separate entity, apart from any operations presently conducted by it or any of its subsidiaries. A comparison of the operating authorities of transferor proposed to be acquired, with the operating authorities held by American Commercial Barge Line Company and its affiliates, readily shows that it is not feasible to create any joinder of such authorities, or perform operations in any common interest. Hence, this transaction will not have any effect upon competition."

By a related Application filed on February 27, 1964, under Section 214 of the Interstate Commerce Act, authority was sought for the issuance by TTC of shares of capital stock and a promissory note and for the assumption by TTC of obligations of Transport, in respect of securities, not to exceed a specified amount.

The related applications were heard by the Examiner of the Interstate Commerce Commission on a common record.

The plaintiffs in this case—Atlantic Coast Line Railroad Company; Chicago, Burlington & Quincy Railroad Company; Illinois Central Railroad Company; and St. Louis-San Francisco Railway Company—who are rail carriers engaged in interstate commerce and who serve numerous points of service of American, Transport and Johnson, appeared as protestants in the proceedings before the Commission.

American and Transport intervened as defendants in this proceeding. Certain railroads referred to as "Southern Railway System Lines," intervened as plaintiffs here, also seeking an injunction enjoining the operation of the Commission's aforesaid Orders of June 30, 1965 and November 12, 1965. These intervening railroads are common carriers of freight by railroad, competing with American and Transport, and appeared as protestants in the proceedings before the Commission.

By its order of June 30, 1965, assailed herein, the Commission found—

"that purchase by TTC Corporation of the operating rights and property and assumption of liabilities of Terminal Transport Company, Inc., and the acquisition by American Commercial Lines, Inc., of control of the operating rights and property of Terminal Transport Company, Inc., through the purchase, and of TTC Corporation and, in turn, Johnson Freight Lines Company, Inc., through purchase of the capital stock of TTC Corporation, upon terms and conditions of TTC Corporation, upon terms and conditions above set forth and in the examiner's report, which terms and conditions are found to be just and reasonable, constitute a transaction within the scope of section 5(2) (a) of the Interstate Commerce Act, and will be consistent with the public interest * * *"

Section 5 of the Interstate Commerce Act, under which the involved Applications were filed, reads in pertinent part as follows:

"§ 5. Combinations and consolidations of carriers

"(1) * * *

"(2) (a) It shall be lawful, with the approval and authorization of the Commission, as provided in subdivision (b) of this paragraph—

"(i) * * * for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part

thereof, of another; or for any carrier, or two or more carriers jointly, to acquire control of another through ownership of its stock or otherwise; * * *

* * * * * *

"(b) Whenever a transaction is proposed under subdivision (a) of this paragraph, the carrier or carriers or person seeking authority therefor shall present an application to the Commission, and thereupon the Commission shall notify the Governor of each State in which any part of the properties of the carriers involved in the proposed transaction is situated, and also such carriers and the applicant or applicants (and, in case carriers by motor vehicle are involved, the persons specified in section 305(e) of this title), and shall afford reasonable opportunity for interested parties to be heard. If the Commission shall consider it necessary in order to determine whether the findings specified below may properly be made, it shall set said application for public hearing; and a public hearing shall be held in all cases where carriers by railroad are involved unless the Commission determines that a public hearing is not necessary in the public interest. If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subdivision (a) of this paragraph and will be consistent with the public interest, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable: *Provided,* That if a carrier by railroad subject to this chapter, or any person which is controlled by such a carrier, or affiliated therewith within the meaning of paragraph (6) of this section, is an applicant in the case of any such proposed transaction involving a motor carrier, the Commission shall not enter such an order unless it finds that the transaction proposed will be consistent with the public interest and will enable such carrier to use service by motor vehicle to public advantage in its operations and will not unduly restrain competition."

The Commission's Order of November 12, 1965—the other order here under attack by plaintiffs—denied petition for reconsideration after finding, inter alia, that the applicant, American Commercial Lines, Inc., is not a carrier by railroad, or controlled by or affiliated with such a carrier; that the proviso of Section 5(2)(b) is not applicable to water carriers, which are not "railroads" as defined in Section 1 of the Act; that the decisions of the Commission in rail-motor acquisition cases under Section 5 have no applicability to the involved transaction; that it is not required that the motor service involved be limited or restricted to that which is auxiliary or supplementary to the water service; and that the Report of Division 3 had correctly interpreted Section 5(2)(b) and had properly considered and determined the applications under Sections 5(2) and 214 of the Interstate Commerce Act.

This cause came on to be heard before a duly designated three-judge statutory court which finds that it has jurisdiction of the subject matter hereof and of the parties hereto.

Plaintiff railroads contend that the Commission, in approving the transaction proposed by applicants, erroneously and improperly interpreted the provisions of Section 5(2) of the Act, failed to apply the standards of the National Transportation Policy, and erroneously found that the application is consistent with the public interest. They argue that Section 5(2) imposes upon the applicants a burden to establish, affirmatively, that the proposed transaction will benefit the public; that the applicants have a special burden of proof, under Section 5(2), just as the railroad carriers would have in acquiring a con-

glomerate, multi-mode transportation system.

The applicable provisions of Section 5(2) are clear and unambiguous. Subdivision (2) (a) thereof authorizes specified forms of unification, acquisition or lease arrangement by two or more carriers, and subdivision (2) (b) of the same section provides for Commission approval and authorization if "the proposed transaction is within the scope of subdivision (a) of this paragraph *and will be consistent with the public interest.*" (Italics supplied) The proviso portion of subdivision (2) (b), however, requires that if the applicant is a carrier by railroad or is controlled by or affiliated with a carrier by railroad within the meaning of paragraph 6, and the proposed transaction involves a motor carrier, then the Commission shall not enter the order of approval and authorization "unless it finds that the transaction proposed will be consistent with the public interest and will enable such carrier to use service by motor vehicle to public advantage in its operations and will not unduly restrain competition."

We see, therefore, that in addition to the showing which the section requires of all carriers, Congress has seen fit to impose upon railroad carriers the additional burden of showing that the transaction will benefit the public, that is, that it will promote or advance the interest of the public. It is this additional burden which the plaintiff railroads would share with other carriers, including the applicants in this case.

The additional burden has not always been imposed, however, on railroads alone. Referring to the Motor Carrier Act of 1935, we find that Section 213 thereof (49 Stat. 555) as originally framed, provided for approval and authorization by the Commission of acquisitions of control of motor carriers when such transactions were shown to be consistent with the public interest. A proviso to that section, however, required that in the case of an applicant who was "a carrier other than a motor carrier * * * or any person which is controlled by such carrier other than a motor carrier," such acquisition of control should not be approved and authorized by the Commission unless it found that the transaction proposed "will promote the public interest by enabling such carrier other than a motor carrier to use service by motor vehicle to public advantage in its operations and will not unduly restrain competition." Under this proviso, therefore, a water carrier was not permitted to acquire a motor carrier without a finding by the Commission that the public interest would be promoted by enabling such water carrier to use service by motor vehicle to public advantage in its operations and would not unduly restrain competition.

When the Transportation Act of 1940 (54 Stat. 898) was enacted, Section 213 of the Motor Carrier Act was substantially re-enacted into Section 5(2) (b) of the Interstate Commerce Act, (American Trucking Associations v. United States, 355 U.S. 141, 78 S.Ct. 165, 2 L.Ed.2d 158) but Congress did make a change in it. In the new Section 5(2) (b), it is the railroads only which have the added burden of showing that the public interest will be promoted and that competition will not be unduly restrained. Other carriers, under the new Section, are required only to show that the proposed transaction will be consistent with the public interest. They are relieved of showing that it will promote that interest as they were required to do under Section 213.

Based upon a literal reading of Section 5(2), and upon reason, together with a consideration of the proviso contained in subdivision (2) (b) thereof and an awareness of Congress' obvious concern—as reflected by legislative history over the years—that railroads might assume a dominating role over other modes of transportation, it is the view of this court, and it so finds, that the construction of the Commission is cor-

rect and that American, a common carrier by water, is not required by the statute to sustain the additional burden of proof imposed on railroad applicants and is not required to make affirmative proof that the proposed transaction will promote, further or advance the public interest; that it is necessary only that American show that the transaction here involved is consistent with the public interest, i. e., compatible and not contradictory or hostile to the public interest. (Anderson Motor Service, Inc. v. United States, D.C., 151 F.Supp. 577)

■ We further agree with the Commission that applicants have met their burden of proof under Section 5(2) (b) by showing that the proposed transaction would be consistent with the public interest. They have established the absence of any adverse effects on either the shipping public or competing carriers.

The court observes that if the protestant railroads were right in their construction of the statute, there would have been no need for the proviso contained in subdivision (2) (b) since the burdens specified therein are, according to their interpretation, contained in the body of the section.

In their opposition to the proposed application, protestants have voiced fears that if the proposed transaction is approved and consummated, applicants may so combine and conduct operations that, with increased expansion, they will be able to destroy competition effectively.

One of the cases cited by plaintiffs and on which they lean heavily is Illinois Central Railroad Company, et al.—Control, etc.—John I. Hay Company, 317 I.C.C. 39 (the *Hay* case). We find, however, that that case is distinguishable in many respects from the case at hand. There, the Commission denied the authority sought by two railroads under Section 5(2) of the Act to acquire control of Hay, a common carrier by water, and also to acquire control of that carrier

under Section 5(16). It appears that the Examiner in that case concluded that "the acquisition would place Hay in such an improved competitive position that the other barge carriers would be swept from the waterways." The Commission found that the financial position of Hay, already strong, would be greatly improved and enlarged were it to become a subsidiary of the two strong railroads.

Although the applicants in the Hay case represented that the carrier, over which stock control was proposed to be acquired, would be operated independently, the Commission found that such independent operation would not result. The Commission found not only that Hay would be controlled by the railroad applicants but that Hay's all-water service would be managed in such a way as to serve the interests of the controlling railroads and to enhance the movement of traffic over all-rail routes—and so the Commission could not make the statutory finding under Section 5(16) that the proposed acquisition of control would not prevent the common carrier by water from being operated in the interest of the public and with advantage to the convenience and commerce of the people. It should be noted that Section 5(16) of the Act imposes a special burden of proof which, by its very terms, is applicable only to railroads. (Section 5(16) is not involved in the instant case and the Commission is not required to make such a statutory finding.)

In the Hay case the Commission found that the competitive advantage accruing to the carrier, because of railroad backing, would be substantial, and foresaw possible complete elimination of competition on the water routes involved. Further finding that the fears of the protestants in that case that Hay's acquired advantages would be so great as to jeopardize their competitive position and the continuance of independent water operations were not unfounded, the Commission concluded that, considering all factors, it could not find that the transaction proposed, if approved, would not

exclude, prevent, or reduce competition on the water routes under consideration, or that it would be consistent with the public interest.

In the case before the court, it appears that American, which is the acquiring carrier, is already a "formidable competitor" for all-water traffic and there was no showing before the Commission that approval of the transaction would improve American's competitive position as an all-water carrier.

During the hearing before the Commission in this case, no evidence was introduced by the railroad protestants of any specific traffic which might be diverted by the consummation of the transaction or the extent to which the protestant railroads might be affected thereby. The Commission ruled that in the absence of such evidence and any clear showing that the protestants would be harmed by the creation of a new competitive service, applicants were not required to adduce supporting testimony from public witnesses.

Unlike the cause before the court, more than a mere investment acquisition was involved in the Hay case. The application in the instant case asked for permission to acquire, and was treated in the proceedings as a request for permission to engage in a financial transaction, not in an operational transaction. The Interstate Commerce Commission's Order in this case does not affirmatively grant authority to American to integrate, under its ownership, barge and motor carrier services and the application to the Commission did not ask for this.

The question of integrated services under the ownership of American arose when the protestants sought, as an alternative to denial, that the Commission condition its approval by imposing restrictions which would preclude applicants from conducting joint motor-barge operations in the future under common ownership.

The Commission pointed out that Section 216(c) of the Act expressly recog-

nizes the right of common carriers by motor and water to enter into arrangements for continuous through service under joint rates and that, in the absence of unusual circumstances dictating a need for such protection, the Commission would not impose the restrictions since it would not be conducive to efficient operations or service by the carriers.

The restrictions urged by protestants and rejected by the Commission were based upon protestants' construction of Section 5(2)(b) of the Act—that the proviso contained in that section was not limited to railroads and that the burden of proof required of railroads applied equally to other modes of transportation. It was on this construction that the restrictions were urged and upon which the Commission heard testimony about the possibilities as to future integrated services under common ownership and operation and the possibility of harm at that time to the protestants. We concur with the Commission which found no justification for the imposition of the requested restrictions.

It would seem that since it was the protestants who raised this issue, which necessarily involved possibilities and conjecture concerning American's conduct of its operations at some time in the future, they are in a rather poor position to urge that they were prejudiced in any way at the hearing.

A review of the National Transportation Policy (54 Stat. 899, 49 U.S.C. preceding § 1) in conjunction with Section 5(2)(b) leads this court further to conclude that there is no conflict between or inconsistency with the aims expressed in the Policy and the provisions of the Section, and we concur with the Commission's view that there is no support in the record for the protestant railroads' contention that the National Transportation Policy, which imposes a duty on the Commission to regulate all modes of transportation fairly and impartially so as to preserve the inherent advantages of each, requires the imposi-

**556**

tion of said additional burden of proof on a water carrier seeking to acquire control of a motor carrier.

■ The court observes that the entire area of law concerning the field of transportation, including the Interstate Commerce Act, might well be due for substantial revisions in view of the many changes which have occurred in that field during the last few years caused by the increasing and diversified needs of the public, modernization of equipment and service and demands for greater speed—changes which could not have been envisioned or anticipated by our legislators at the time of the drafting, years ago, of our present statutes. The task, of course, is one for Congress, not for the courts. Similarly, if the statutory provisions under consideration in the instant case are unfair to the railroads, it is for Congress to correct the unfairness.

■ The Commission's order was issued after a full public hearing and is within the scope of the statutory jurisdiction and authority of the Commission. It is supported by substantial evidence on the record viewed as a whole, and by adequate findings of the Commission, based upon that evidence. It has a rational basis, and the Commission's action was not arbitrary, capricious or an abuse of discretion, and is in all respects in accordance with law.

We find that the holdings and decisions of the Commission were proper and we therefore affirm their orders of June 30, 1965 and November 12, 1965.

The relief prayed for by plaintiffs and that prayed for by intervening plaintiffs should be denied and the Complaint and the Intervening Complaint herein should be dismissed.

This memorandum opinion shall constitute the court's findings of fact and conclusions of law.

Judgment in accordance with opinion.