**ALABAMA HIGHWAY EXPRESS, INC., and Eagle Motor Lines, Inc., Plaintiffs,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants.**

**Civ. A. No. 66–747.**

United States District Court
N. D. Alabama, S. D.
Jan. 18, 1968.

Maurice F. Bishop and John P. Carlton, Lange, Simpson, Robinson & Somerville, Ormond Somerville, Birmingham, Ala., James W. Wrape, Robert E. Joyner and Wrape & Hernley, Memphis, Tenn., and Washington, D. C., for plaintiffs.

Watkins, Daniell, Davis & Serby, Atlanta, Ga., D. H. Markstein, Jr., Birmingham, Ala., Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Macon L. Weaver, U. S. Atty., Robert W. Ginnane, Gen. Counsel for I.C.C., Manny H. Smith, Atty., Washington, D. C., David E. Hampe, Jr., Birmingham, Ala., William R. Weissman, Washington, D. C., on the brief, for defendants.

Before GEWIN, Circuit Judge, and LYNNE and GROOMS, District Judges.

PER CURIAM:

The Interstate Commerce Commission granted separate certificates of public convenience and necessity, pursuant to Section 207(a) of the Motor Carrier Act, 49 U.S.C. § 307(a), to Home Transportation Company, Inc. (Home), Docket No. MC–111545 (Sub-No. 69); Poole Truck Lines (Poole), Docket No. MC–115162 (Sub-No. 103); and Coker Trucking Company (Coker), Docket No. MC–115691 (Sub-No. 16), authorizing them to transport in interstate commerce as motor vehicle common carriers over irregular routes between Holt, Alabama, and various points in the East and middle West, (1) cast iron soil pipe and fittings and (2) conduit or pipe bituminized fibre and connections or fittings. 100 M.C.C. 703. Six existing motor carriers filed protests against portions of the proposed authority[1].

By this action, brought under 28 U.S.C. §§ 1336, 1398, 2284 and 2321–2325, plaintiffs seek to enjoin, set aside and annul the order of the Commission, Division 1.

All three carriers presently have substantial authority to transport special commodities over extensive areas of the Central and Eastern portions of the United States. The existing services of Home and Coker are primarily southbound, and Coker already serves the supporting shipper, Central Foundry Company (Central)[2], with operations to Georgia and Florida. Poole presently transports some of the commodities involved herein from Ironton, Ohio, to points in eleven states and possesses interstate authority to operate in Alabama. Home provides twenty-four hours a day, seven days a week, as well as stop-off, job-site, and scheduled delivery services, all of which it hopes to offer in its proposed operations.

Central[3], located at Holt, Alabama, is one of the largest soil pipe manufacturers in the world. Its present annual production will range between 140,000 and 170,000 tons. It has enjoyed substantial increases in its production over the last decade. Its output consists of the commodities covered by the certificates. Most of these commodities are used for constructing sewage systems,

---

1. The Hearing Examiner found that existing services were inadequate to meet the total needs of Central and recommended that the Home and Coker applications be granted, but that the Poole application be denied. The Operating Rights Review Board adopted the Examiner's recommendations. Upon petitions for reconsideration by Poole and the several protestants, including plaintiffs, the Commission, Division 1, reopened the proceedings, sustained the Examiner as to grant of authority to Home and Coker, but reversed his recommendation that Poole's application be denied.

2. I. e., by interline with Service Express Company from Holt to Coker's terminal in Demopolis.

3. Home and Coker filed their applications at the request of Central. Poole's application was filed with its knowledge.

and because of this fact Central must frequently ship same directly to construction sites often located in rural areas.

The two plaintiffs, Alabama Highway Express, Inc. (Alabama), and Eagle Motor Lines, Inc. (Eagle), are the only carriers presently authorized to serve Holt direct. From that point Alabama is authorized to carry general commodities over irregular routes in Indiana, Northeastern Illinois, Northwestern Ohio and reaches points in the Detroit, Michigan, area by interlining with connecting carriers at the Toledo, Ohio, gateway. Eagle is primarily a heavy hauler and is authorized to transport cast iron pressure and soil pipe from Holt to points in Iowa, Kansas and Missouri (except St. Louis), and cast iron pipe and fittings therefor to St. Louis and points in Ohio, Indiana, Michigan, Illinois and Wisconsin. It lacks authority to transport fibre bituminized pipe.

Since 1954 Central, in its desire to remain competitive with other manufacturers as related to the transportation of its commodities, shifted much of its transportation from rail to motor vehicle[4]. Although some of this traffic was routed by way of public for-hire motor carriers, the great bulk of its shipments was transported in its own fleet of private trucks, consisting at present of 70 power units and 91 trailers.

Central estimates that it needs approximately 35 trailers daily and 40 during the peak construction season in the spring and summer. Its preference is for flatbed trailers[5] with removable sides as opposed to vans and convertervans. However, the Commission was not impressed with Central's purported dissatisfaction with converter-van, flatbed equipment.

It has been the practice of Central to call a motor carrier within twenty-four hours of a planned shipment. If the carrier cannot supply the desired equipment, Central then schedules one of its private trailers to carry the shipment without investigating further the availability of common carrier service. It complains of, and the Commission held that it has shown, a shortage of flatbed service by public as well as its own private fleet, resulting in delays in pickup and transportation of orders, particularly during periods of peak demand. The Commission, however, added that "existing service is characterized as satisfactory * * *"

The Commission found from the totality of the facts and circumstances that public convenience and necessity required the additional service, but wrought into such determination a primary finding that providing an incentive to a large shipper to divert the bulk of its traffic from its own private carriage to the regulated motor carrier industry comports with such public convenience and necessity.

Alabama and Eagle contend that existing motor carriers have the right to transport all the traffic they can handle adequately in the territories they serve and that in the absence of a showing of some material inadequacy in available motor carrier service, no new service should be authorized. They contend that the adequacy of the present service is attested by the Commission's findings and conclusions, especially its statements that "existing service is characterized as satisfactory," and as to Eagle "that its present service is generally adequate." Numerous authorities are cited to sustain their position that where existing service is adequate additional service will not be authorized. As analogous and sustaining authority Eagle cites Dixie Highway Express, Inc. v. United States, (D.C.Miss.) 242 F. Supp. 1016, 1021, wherein it was held that no certificate affecting the area of another carrier would be issued until such carrier had been furnished an op-

---

4. In 1954, 97% of its outbound freight was by rail and 3% by truck. In 1964, 21% was by rail and 79% by truck.

5. Alabama has 107 flatbed trailers, Eagle 375, Home 130, Coker 26, and Poole 60.

portunity either to improve or correct his service to the route or to decide whether he wishes to or can furnish the added service. On a second trial (268 F.Supp. 239), the court referred to the stated holding as the "unvariable rule" of the Commission. On December 18, 1967, 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639, the Supreme Court reversed the District Court with overtones adverse to the plaintiffs, stating:

"The District Court erred in holding that it is the 'unvariable rule' of the Commission to grant existing carriers an opportunity to remedy deficiencies in service, and in holding that carriers have a property right to such opportunity before a new certificate may be issued upon a lawful finding of public convenience and necessity pursuant to the statute. The Commission's power is not so circumscribed. No such limitation has been established by the Commission's own decisions or by judicial determinations. It is, of course, true that the Commission should consider the public interest in maintaining the health and stability of existing carriers, see United States v. Drum, 368 U.S. 370, 374, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962); but it is also true that, upon the basis of appropriate findings, 'the Commission may authorize the certificate *even though the existing carriers might arrange to furnish successfully the projected service.'* ICC v. Parker, 326 U.S. 60, 70, 65 S.Ct. 1490, 1495, 89 L.Ed. 2051 (1945); see Schaffer Transportation Company v. United States, 355 U.S. 83, 90–91, 78 S.Ct. 173, 177, 178, 2 L.Ed.2d 117 (1957). Accordingly we reverse and remand for further proceedings consistent with this opinion." (Emphasis supplied)

The rules governing the scope of our review of the Commission's decisions have been repeatedly stated by this Court, Alabama Highway Express, Inc. v. United States, D.C., 241 F.Supp. 290; Floyd & Beasley Transfer Co. v. United States, D.C., 256 F.Supp. 23, and cases there cited, and will not be here repeated.

 Without attempting a detailed analysis of the evidence supporting the findings and conclusions of the Commission, it is sufficient to state that from a review of the whole record, we are of the opinion that the Commission's order rests upon adequate findings supported by substantial evidence. The petition of Eagle for further hearing was addressed to the sound discretion of the Commission and its denial is not open to question unless it is shown there has been a clear abuse of such discretion. United States v. Pierce Auto Freight Lines, 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821. We find no clear abuse of discretion in the denial of the petition.

The order of the Commission is affirmed. An appropriate judgment will be entered dismissing the action with prejudice.