**BELL LINES, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

and

**Carolina Freight Carriers Corporation and Kilgo Motor Freight, Inc., Intervening Defendants.**

Civ. A. No. 3099.

United States District Court
S. D. West Virginia,
at Charleston.

Oct. 30, 1968.

James W. Lawson, Macdonald & McInerny, Washington, D. C., W. T. Brotherton, Jr., Amos & Brotherton, Charleston, W. Va., for Bell Lines, Inc.

Donald F. Turner, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Milton J. Ferguson, U. S. Atty., Huntington, W. Va., for the United States.

Robert W. Ginnane, Gen. Counsel, Raymond M. Zimmet, Atty., I.C.C., Washington, D. C., for Interstate Commerce Commission.

Frank W. Snepp, McDougle, Ervin, Horack & Snepp, Charlotte, N. C., Guy H. Postell and Frank D. Hall, Atlanta, Ga., for Carolina Freight Carriers Corp. and Kilgo Motor Freight, Inc.

Before BOREMAN, Circuit Judge, and FIELD and CHRISTIE, District Judges.*

PER CURIAM:

This action is an appeal pursuant to 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321 to 2325, inclusive, and 49 U.S.C.A. §§ 305(g) and 17(9), to enjoin, annul and set aside certain orders of the Interstate Commerce Commission (Commission) authorizing, under the provisions of 49 U.S.C.A. Section 5, the transfer from Kilgo Motor Freight, Inc. (Kilgo) to Carolina Freight Carriers Corporation (Carolina) of certain operating authorities—most particularly the authority to serve Pittsburgh, Pennsylvania, as an off-route point in connection with Carolina's right to serve all points in the states of North Carolina, South Carolina, Georgia and Florida. This action was previously before the Court and was remanded to the Commission for specific findings and conclusions on the issues of

---

* Three-Judge Court convened pursuant to 28 U.S.C.A. §§ 2284 and 2325.

dormancy and need for service at the Pittsburgh off-route point. Bell Lines, Inc. v. United States, 263 F.Supp. 40 (S.D.W.Va.1967). Upon remand the Commission reopened the proceedings for consideration on the existing record and made additional findings of fact in accord with the opinion of this Court,[1] subsequently affirming its prior order, 93 M.C.C. 543, authorizing Carolina to serve Pittsburgh as an off-route point. In a supplemental complaint filed herein, Bell Lines, Inc., seeks review of the latter order of the Commission, contending that there is insufficient evidence in the record before the Commission to justify its finding that Kilgo conducted a reasonably active and continuous service at Pittsburgh or that there was need for new service at Pittsburgh.

■■ Our jurisdiction upon review of an order of the Commission is limited to determining whether or not it has acted within its statutory powers and whether the order complained of is supported by substantial evidence. McLean Trucking Co. v. United States, 321 U.S. 67, 87–88, 64 S.Ct. 370, 88 L.Ed. 544 (1944); Illinois Central Railroad Co. v. Norfolk & Western Railway Co., 385 U.S. 57, 66, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966). As was pointed out by Judge Dobie in O. C. Wiley & Sons, Inc. v. United States, 85 F.Supp. 542, 545 (W.D.Va.1949), in reviewing Commission orders concerning acquisition of control of carriers under Section 5 of the Act, we must take cognizance of the wide discretion given the Commission by Congress to determine which acquisitions are and which are not in the "public interest,"

"It has been often recognized that Section 5 confers broader authority and greater administrative discretion than most any other section of the Act and that the legislative history of the recent amendments to this section of the Act show congressional intent to broaden the authority of the Commission. * * * The primary concern of the Commission here is the protection of the public interest. It has been repeatedly held that a very strong showing must be made * * * by one who seeks to set aside an order of the Commission in this field."

■■ In determining that Carolina's acquisition of Kilgo's rights to serve the Pittsburgh area was in the "public interest," the Commission relied in part upon a finding that Kilgo's service in that area prior to the acquisition "constituted a reasonably active and continuous service." While Bell Lines zealously protests the adequacy of the record to support this finding, consideration of Kilgo's activities, as the Commission pointed out, must be made "in the context that serious financial losses had preceded vendor's (Kilgo's) change in control to another, whose deteriorating financial condition turned out to be scarcely better."[2] Even within the con-

1. In the proceeding now before the Court, plaintiff contends, among other things, that the Commission has failed to conform to the Court's order on remand, however, in view of the Commission's finding that Kilgo's operations "constituted a reasonably active and continuous service," we find this particular objection to be without merit.

2. The change in control noted by the Commission refers to an earlier proceeding before the Commission in which Tri-State Motor Transit Co. sought approval of the acquisition of Kilgo. Because of Kilgo's precarious financial condition, temporary control through management was granted to Tri-State in 1960 and its application was subsequently approved on February 1, 1961. During the interim, however, Tri-State's own financial position deteriorated to such an extent that it could not consummate the transaction and the approval order expired without being exercised. While under Tri-State's control, the financial condition of Kilgo suffered a further decline and, following a futile attempt to operate the line, it passed into the hands of a receiver. Subsequently, on December 19, 1961, Carolina was granted temporary authority to operate under the portion of Kilgo's operating rights which it sought to purchase, and that authority, as extended, is still outstanding.

text of its previous financial difficulty, however, Kilgo was able to present evidence to the Commission by use of an abstract stated to be a 10 percent sampling of its traffic over a six months' period, which showed five Pittsburgh shipments. By projection the Commission was able to determine that during a six months' period prior to the acquisition of temporary control by Carolina, Kilgo had a total of 50 Pittsburgh shipments. Although Bell contests the validity of such a projection, it need only be pointed out that the weight of the evidence is to be determined by the Commission and not by the Courts and, under the circumstances of this case, we cannot say that the procedure by which the Commission established the extent of Kilgo's activities was unreasonable.[3] Merchants' Warehouse Co. v. United States, 283 U.S. 501, 508, 51 S.Ct. 505, 75 L.Ed. 1227 (1931); United States v. Pan American Petroleum Corp., 304 U.S. 156, 158, 58 S.Ct. 771, 82 L.Ed. 1262 (1938). Other considerations, established in the record, which led the Commission to conclude that acquisition by Carolina of Kilgo's operating rights in the Pittsburgh area would be in the "public interest," included testimony by a number of shippers as to the need for such a service and the actual utilization by the shippers of the service offered by Carolina under its temporary operating authority. In its order rendered prior to the remand in this case, the Commission had indicated that approval of the transfer depended upon the existence of either a showing of adequate past service or a present need for such service. However, in the order now under review, the Commission has pointed out that these two criteria are not necessarily mutually exclusive, 104 M.C.C. at 191, and that a combination of the two criteria may be used to support approval. Chicago Kansas City Freight Line, Inc.—Pur.—Capitol, 97 M.C.C. 68. We cannot say that approval based upon such an analysis is beyond the statutory powers of the Commission.[4]

▮ Thus, upon consideration of the briefs and argument of counsel and from a review of the whole record in this proceeding, the Court is of the opinion that the findings made by the Commission are sufficiently supported by the evidence, that they are adequate to sustain the Commission's orders, and that the Commission acted within the scope of its authority and without abuse of its discretion.

3. Aside from the difficulty of reviewing the total number of shipments transported by Kilgo during the six months' period, testimony in the record indicates that the records have not been entirely in order since Kilgo was managed by Tri-State. Such a condition was brought about not only by the apparent carelessness of Tri-State but also as a result of the examination of the records by other carriers interested in purchasing Kilgo's operating rights. Under these difficult circumstances, it seems apparent that the method relied upon by the Commission in determining the extent of Kilgo's activities was the one best calculated to produce at least substantially correct results.

4. The Commission exercises broad discretion in approving or rejecting applications of carriers seeking control of the operating rights of other carriers, and the statutory language creating its authority is couched in the most general terms. Thus, 49 U.S.C.A. Section 5(2) (b) provides, " * * * If the Commission finds that, subject to such terms and conditions and such modifications as it shall find to be just and reasonable, the proposed transaction is within the scope of subdivision (a) of this paragraph and will be *consistent with the public interest*, it shall enter an order approving and authorizing such transaction, upon the terms and conditions, and with the modifications, so found to be just and reasonable * * *." (Emphasis added).