**BOWMAN TRANSPORTATION, INC.,**
**Plaintiff,**

v.

**UNITED STATES of America and the Interstate Commerce Commission, Defendants,**
**and**
**Mercury Freight Lines, Inc., and Sam N. Cole, d/b/a Alabama-Georgia Express, Intervening Defendants.**

**Civ. A. No. 69–288.**

United States District Court,
N. D. Alabama, M. D.

Jan. 21, 1970.

John P. Carlton, Bishop & Carlton, Birmingham, Ala., for plaintiff.

Wayman G. Sherrer, U. S. Atty., Northern District of Alabama, Birmingham, Ala., Raymond M. Zimmet, Atty., Interstate Commerce Commission, John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for defendants.

A. W. Jones, Birmingham, Ala., John S. Fessenden, Drew L. Carraway, Washington, D. C., for intervening defendants.

Before RIVES, Circuit Judge, and LYNNE and ALLGOOD, District Judges.

## OPINION OF THE COURT

ALLGOOD, District Judge.

On October 23, 1967, Mercury Freight Lines, Inc., (Mercury) of Mobile, Alabama, and Sam N. Cole of Birmingham, Alabama, doing business as Alabama-Georgia Express (AGE) filed an application with the Interstate Commerce Commission (ICC) seeking authority under Section 5(2) of the Interstate Commerce Act [49 U.S.C. § 5(2)] for Mercury to purchase a portion of AGE's regular and corresponding irregular operating authority between Birmingham, Alabama, and Atlanta, Georgia, for $600,000.

A hearing on the proposed purchase was held in April, 1968. A number of parties including the plaintiff, Bowman Transportation, Inc., opposed the application at the hearing. Briefs were filed by all parties on or about June 10, 1968.

In September, 1968, the Hearing Examiner (Examiner) submitted his report recommending the ICC's approval and authorization of the purchase transaction in its entirety, conditioned upon the cancellation of certain of AGE's operating rights. The cancellation condition was required in order to prevent dual motor authorities to evolve from the single authority being sold. In October, 1968, plaintiff and other parties opposing the proposed transaction between Mercury and AGE filed exceptions to the Examiner's report and recommendations with the ICC. A joint reply to all of the exceptions was filed with the ICC by Mercury and AGE in November, 1968.

On April 11, 1969, the ICC, Division 3, entered a brief order adopting the Examiner's report and recommended order. The ICC concluded that the exceptions filed by plaintiff and other parties did not necessitate the issuance of a report discussing the issues raised by the exceptions, since these issues were spoken to in the Examiner's report adopted by the ICC.

The ICC order was served on April 14, 1969, and it authorized the purchase to be effective twenty days thereafter. The transaction between Mercury and AGE was consummated on May 6, 1969, with Mercury paying over to Cole the $600,000 purchase price for the operating authority.

On May 20, 1969, plaintiff filed the instant complaint against the United States of America and the ICC, asking this court to set aside the ICC's order in whole or in part. The court permitted Mercury and AGE to intervene as defendants in the action. This action is brought under 28 U.S.C. §§ 1336, 1398, 2284, 2321–2325; 49 U.S.C. §§ 17(9), 305(g) (h), 306(a), 307(a); and 5 U.S. C. § 1009.

Plaintiff contends that the ICC in approving and authorizing Mercury's purchase of certain of AGE's operating rights erred in several respects. Plaintiff contends:

> (1) That the ICC in approving and authorizing the purchase transaction did not follow its resolution of similar

issues in the past and thus violated the principle of consistency in administrative rulings.

(2) That the ICC's approval of the sale of a portion of AGE's regular route authority, together with the underlying and corresponding part of the irregular route authority, was unlawful, the contention being that the only lawful action the ICC could have taken would have been authorization of the purchase of all of the regular route authority together with all of the irregular route authority possessed by AGE.

(3) That the division of AGE's operating authority, authorized by the ICC, is not along clear-cut geographic lines and therefore the division according to prior ICC rulings is not in the public interest.

(4) That the purchase price approved by the ICC is excessive and inconsistent with prior ICC rulings.

(5) That the ICC erred when it concluded that it was not necessary under Sec. 214 of the Interstate Commerce Act (49 U.S.C. § 314) for Mercury to seek and receive approval for the issuance of the $600,000 promissory note used to purchase AGE's operating authority.

■ This court has examined each of plaintiff's contentions and finds that they are without merit. Section 5 of the Interstate Commerce Act grants broader authority and discretion to the ICC in connection with mergers or purchase of operating rights than most any other section of the Act. See O. C. Wiley & Sons v. United States, 85 F.Supp. 542, 545, (W.D.Va.1949), aff'd. 338 U.S. 902, 70 S.Ct. 308, 94 L.Ed. 554 (1949); Bell Lines, Inc. v. United States, 291 F. Supp. 964, (S.D.W.Va.1968); M & M Transportation Co. v. United States, 128 F.Supp. 296, 298 (Mass.1955), aff'd. 350 U.S. 857, 76 S.Ct. 102, 100 L.Ed. 762 (1955). The ICC in approving Mercury's purchase of certain of AGE's operating rights did not exceed the authority given to it in Section 5.

As the Supreme Court noted in McLean Trucking Co. v. United States, 321 U.S. 67, 87, 64 S.Ct. 370, 381, 88 L.Ed. 544 (1944), "If the Commission did not exceed the statutory limits within which Congress confined its discretion and its findings are adequate and supported by evidence, it is not our function to upset its order."

■ Plaintiff contends that the ICC's action here was required to be consistent with its action in other cases. The courts, however, have repeatedly held to the contrary. In Anderson Motor Service v. United States, 151 F.Supp. 577, (E.D.Mo.1957), the court stated that, "The courts have many times held that the findings of the Commission may not be attacked because they are inconsistent with findings made in other cases." Id. at 581, 582. See also Allen v. United States, 187 F.Supp. 625 (S.D.Fla.1960); Georgia Public Service Commission v. United States, 283 U.S. 765, 775, 51 S. Ct. 619, 75 L.Ed. 1397 (1931); Virginian Ry. Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463 (1926); Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 271, 46 S. Ct. 500, 70 L.Ed. 941 (1926). It is interesting to note that even though the ICC's action in the instant case was not required to be consistent with its action in prior cases that the plaintiff did not show that the action taken herein was inconsistent with action taken in other cases.

■ Plaintiff contends that a restriction contained in the certificate of AGE supposedly compelled AGE either to sell all of its operating authority (and not merely that portion embracing Birmingham-Atlanta), or none of it. That restriction, which was placed in the middle of AGE's certificate—after all of AGE's regular route authority had been described, but before any of its irregular route authority had been described—specifically provided:

"The regular-route operations authorized above shall not be severable, by

sale or otherwise, from the irregular route authority described below."

According to the ICC's interpretation, this restriction was imposed to prevent AGE from selling either the regular or irregular authority and retaining the other so as to prevent two carriers from operating between the same points under authority originally arising from one operating right. See Examiner's report, p. 13; 109 M.C.C. 135.

The ICC, therefore, concluded that AGE was not obliged, as plaintiff urged, to sell all of its authority or none of it, but that, instead, if it desired to sell one portion of its authority, regular or irregular, which corresponded with another authority it held, either regular or irregular—such as here where AGE possessed both regular and irregular route authority to serve Birmingham-Atlanta —then, in that event, it would have to sell the other authority also.

Here, AGE proposed to do that very thing, thereby fully complying with the restriction by selling to Mercury both its regular and irregular route authority to serve Birmingham-Atlanta. While plaintiff disagrees with the ICC's interpretation of the restriction, plaintiff does not show, as it would have to before this court could overrule the ICC's interpretation, that such interpretation was "capricious or arbitrary, that it constituted an abuse of discretion, or that it did violence to some established principle of law." Malone Freight Lines v. United States, 107 F.Supp. 946, 949 (N.D.Ala.1952), aff'd. per curiam, 344 U.S. 925, 73 S.Ct. 497, 97 L.Ed. 712 (1953); Alabama Highway Express, Inc. v. United States, 241 F.Supp. 290, 295–296, n. 12 (N.D.Ala.1965), aff'd per curiam, 382 U.S. 106, 86 S.Ct. 255, 15 L.Ed.2d 190 (1965). This court finds the ICC's interpretation plainly rational and that there has been full compliance by AGE with that interpretation.

■ Plaintiff contends that the division of AGE's operating authority authorized by the ICC is not along the clear-cut geographic lines previously required by the ICC. The instant Mercury-AGE purchase transaction involves the sale of that part of AGE's irregular route authority between Birmingham and points within a 15-mile radius thereof, on the one hand, and, on the other, points in seven named Georgia counties, one of which includes Atlanta. This division clearly comports with numerous earlier Commission decisions approving divisions of operating rights along similar, well-defined geographical lines. See M. C. Purdie Corp.—Purchase (Portion)—Hoffman's Motor Transportation, 57 M.C.C. 790; Red Star Express Lines of Auburn—Purchase (Portion)—Seifert, 59 M.C.C. 447; Penbrook Hauling Co., Inc.—Purchase (Portion)—Cooper and Mesharer, 85 M.C.C. 738, and Docket No. MC–F–7206.

■ Plaintiff further contends that even if the division of the operating rights involved herein was proper, the ICC should have denied the purchase application because the authority retained by AGE might possibly be used to create, in the future, additional competitors for plaintiff, other than Mercury, in the Birmingham-Atlanta market. Any future applications by AGE, or by other carriers seeking to purchase AGE's retained authority, which would thereby permit service between Birmingham and Atlanta, would be subject to the ICC's scrutiny under Sec. 5(2) of the Interstate Commerce Act, and the applicant would have to prove that the transaction, under the particular facts involved there, would be consistent with the public interest.

■■ Therefore, so long as the ICC has prevented dual motor authorities to evolve from the single authority being sold (which it has done here through the conditions it has imposed, requiring the cancellation of certain authorities by AGE and Mercury), thereby assuring that Mercury alone can operate between Birmingham and Atlanta pursuant to the purchased or retained authority, the ICC has properly discharged its statuto-

ry duties. The ICC need not, and should not, insulate plaintiff from all future competition in that market, particularly when it may well be in the public interest to allow such competition. See Atlanta-New Orleans Motor Freight Co. v. United States, 197 F.Supp. 364, 370 (N.D.Ga.1961); Baltimore Transfer Co. v. I.C.C., 114 F.Supp. 558, 564–565 (D. Md.1953), aff'd. per curiam, 346 U.S. 890, 891, 74 S.Ct. 225, 98 L.Ed. 394 (1953), Lang Transp. Corp. v. United States, 75 F.Supp. 915, 926–928 (S.D. Calif.1948).

■ The price paid by Mercury to AGE for the operating rights involved herein was $600,000. Plaintiff contends the price was excessive, particularly since AGE in 1965 purchased these rights for $165,000. The ICC considered this point and concluded that the increase in AGE's gross revenues from $104,300 in 1965 to $1,169,000 in 1967, which stemmed primarily from profits from the operating rights being sold, combined with the fact that AGE had previously rejected offers of $450,000 and $500,000 for these rights, warranted the purchase price paid. Even if this court disagreed with the ICC's determination that the purchase price was reasonable, which it does not, it could not substitute its judgment for that of the ICC in cases such as the one herein where the determination has ample support in the record. See United States v. Pierce Auto Freight Lines, 327 U.S. 515, 535–536, 66 S.Ct. 687, 90 L.Ed. 821 (1945).

■ Plaintiff contends that the ICC erred in concluding that Section 214 approval of the $600,000 purchase money note is not required. Plaintiff alleges that after issuance of the described note, the securities of Mercury would exceed the one million exemption in Secs. 20a and 214 of the Interstate Commerce Act (49 U.S.C. §§ 20a and 314).

Plaintiff argues without any authority to support its position, that the earned surplus of Mercury must be added to the par value of its issued and outstanding stock, in order to determine whether the one million dollar exemption, contained in Section 214, has been exceeded. To the contrary, as the ICC has recognized in Chemical Tank Lines, Inc., Securities, 87 M.C.C. 386, 387, Section 214 specifically provides that in determining whether the one million dollar exemption has been exceeded, the par value or fair market value of the stock, whichever is greater, is to be determined as of the date of its issue not at some date subsequent to its original issue as plaintiff seeks to do here.

The par value or book value of the Mercury stock at the time of its issue, even when added to the amount of the $600,000 purchase money note, is substantially under the one million dollar exemption. Thus, the ICC properly ruled that a Section 214 application was not required.

Plaintiff has not submitted any valid ground for reversal of the ICC's order. The findings made by the ICC are sufficiently supported by the evidence and are adequate to support the ICC's order. The ICC has acted within the scope of its authority and without abuse of its discretion.

For all of the foregoing reasons the decision and order of the ICC is affirmed. An appropriate judgment will be entered dismissing the complaint with prejudice.