**MINNESOTA TRANSPORTATION REGULATION BOARD, Petitioner,**

**v.**

**UNITED STATES of America and the Interstate Commerce Commission, Respondents.**

**No. 91–2650.**

United States Court of Appeals, Eighth Circuit.

Submitted March 9, 1992.

Decided May 22, 1992.

Margaret Eileen Hendriksen, St. Paul, Minn., argued (Hubert H. Humphrey III and Margaret Eileen Hendriksen, on the brief), for petitioner.

Michael Martin, Washington, D.C., argued (James F. Rill, Robert B. Nicholson, James W. Lowe, Robert S. Burke, Craig M. Keats and Michael Martin, on the brief), for respondents.

Before McMILLIAN and HANSEN, Circuit Judges, and VAN SICKLE,* Senior District Judge.

McMILLIAN, Circuit Judge.

The Minnesota Transportation Regulation Board (MTRB) appeals from a decision of the Interstate Commerce Commission (ICC) exempting from regulation a transaction between Herman Brothers, Inc. (Herman) and Thompson Truck Line, Inc. (Thompson). *Herman Bros., Inc.—Purchase Exemption—Thompson Truck Line, Inc.*, 7 I.C.C.2d 382 (1991). For reversal, the MTRB argues that the ICC abused its discretion in (1) interpreting 49 U.S.C. § 11343(a)(2) to cover certain transactions not amounting to a consolidation of motor carriers and (2) limiting the issues which may be argued in opposition to a petition for an exemption under 49 C.F.R. Part 1186 (1991). For the reasons discussed below, we affirm the decision of the ICC.

FACTS:

On August 21, 1990, the ICC granted an exemption from regulation to a proposed transaction between Herman and Thompson, two motor carriers. Because no comments in opposition to the transaction were filed within sixty days, the exemption became effective and the transaction was consummated on October 23, 1990. Under the transaction, Thompson transferred its interstate and Minnesota intrastate operating rights to Herman. Although Thompson intended to completely discontinue trucking activity upon completion of the transfer, the parties agree that this transaction was neither a merger nor a consolidation of the two corporations. Some of the Minnesota intrastate rights sought to be transferred are "grandfather" irregular route common carrier authority, which may not be transferred under Minnesota law.[1]

The ICC exempted this transaction from regulation pursuant to 49 U.S.C. § 11343(e)(1), which gives the ICC the power to:

exempt a person, class of persons, transaction, or class of transactions from the merger, consolidation, and acquisition of control provisions of this subchapter if the [ICC] finds that—

> (A) the application of such provisions is not necessary to carry out the transportation policy of section 10101 of this title; and

> (B) either (i) the transaction is of limited scope, or (ii) the application of such provisions is not needed to protect shippers from the abuse of market power.

> ....

Any transaction for which an exemption is granted pursuant to § 11343(e) also "is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction." *Id.* § 11341(a). Thus, the ICC's exemption of this transaction allowed the firms to transfer the "grandfather" authority without regard to its nontransferability under Minnesota law.

The MTRB opposed the exemption and, in January, 1991, filed a petition with the ICC to reopen the proceeding and to revoke the exemption. The MTRB's primary argument was that the ICC cannot exempt this transaction pursuant to § 11343(e) because the transaction does not qualify as a consolidation, merger, or acquisition of control. Those transactions which may be exempted under § 11343(e) are listed in § 11343(a), which provides in part:

The following transactions involving carriers providing transportation subject to the jurisdiction of the [ICC] ... may be carried out only with the approval and authorization of the [ICC]:

> ....

> (2) a purchase, lease, or contract to operate property of another carrier by any number of carriers.

---

* The Honorable Bruce M. Van Sickle, Senior United States District Judge for the District of North Dakota, sitting by designation.

1. Although acquisition of the "grandfather" authority is not prohibited per se, the MTRB notes that such transfer is subject to a determination of public need under Minn.Stat. § 221.121 (1990), which was not made here.

The MTRB argued that, for § 11343(a)(2) to apply, two carriers must consolidate or merge. In other words, the MTRB argued that § 11343(a)(2) grants the ICC exclusive jurisdiction only over "a purchase of another carrier, a lease of another carrier, or a contract to operate property of another carrier," and not "a purchase of property of another carrier, a lease of property of another carrier, or a contract to operate property of another carrier." The MTRB argued that because this transaction was not a consolidation of the two firms, § 11343 is inapplicable and this transaction is instead covered by 49 U.S.C. § 10926, which specifically governs transfers of certificates and permits.[2]

The MTRB also argued that if § 11343 applies to this transaction, the ICC was required to consider the possible dormancy of the Thompson "grandfather" irregular route authority.[3] The ICC had granted this exemption pursuant to the procedures provided by *Exemption of Certain Transactions under 49 U.S.C. 11343*, 133 M.C.C. 449 (1984) (*Exemption*). In *Exemption*, the ICC utilized its statutory authority to exempt the entire class of § 11343 transactions between nonbus motor carriers. At that time, the ICC considered the National Transportation Policy (NTP), as required by § 11343(e), and found that only two issues need to be considered on a case-by-case basis: (1) whether the transaction in question raises issues of competition (antitrust issues) and (2) whether the transaction raises issues of employee protection. The procedures set out in *Exemption* are detailed in 49 C.F.R. Part 1186 (1991). The MTRB argued that the ICC must allow a challenge to a proposed exemption to raise other issues, such as dormancy.

On May 22, 1991, the ICC denied the MTRB's petition to reopen the proceeding. *Herman Bros., Inc.—Purchase Exemp-*

*tion—Thompson Truck Line, Inc.*, 7 I.C.C.2d 382 (1991). The ICC held that § 11343(a)(2) does not require a consolidation and that the issues raised by the MTRB in opposition to the transaction are irrelevant under *Exemption*. The MTRB has appealed to this court.

## INTERPRETATION OF 49 U.S.C. § 11343(a)(2)

In evaluating the ICC's construction of 49 U.S.C. § 11343(a)(2), we must first determine whether Congress has directly addressed the meaning of the statute. If it has, our inquiry ends, because "the court as well as the agency must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A. v. National Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984) (*Chevron*). This court is entitled to use traditional tools of statutory interpretation in answering this first question, and is not limited to the text itself. *Id.* at 843 n. 9, 104 S.Ct. at 2781 n. 9. If we find the statute silent or ambiguous, we must defer to the ICC's interpretation so long as it is reasonable, regardless of whether we might have taken a different view. *Id.* at 843–45, 104 S.Ct. at 2782–83. *See also Beef Nebraska, Inc. v. United States*, 807 F.2d 712, 716 (8th Cir.1986) ("When our review is of an agency's interpretation of a statute that it administers, however, the agency's determination often is entitled to some deference."). However, we must take into account that "where the sustaining of federal jurisdiction leads, by statute, to the complete ouster of state authority," the agency's interpretation must be carefully reviewed. *County of Marin v. United States*, 356 U.S. 412, 420, 78 S.Ct. 880, 884, 2 L.Ed.2d 879 (1958) (*County of Marin*).

The MTRB's first argument is that the scope of 49 U.S.C. § 11343(a)(2) is limit-

---

**2.** 49 U.S.C. § 10926 provides in part that "[e]xcept as provided in this subtitle, a certificate or permit issued under section 10922 or 10923 of this subtitle—(1) if a certificate or permit of a motor carrier, may be transferred under regulations of the [ICC]." If § 10926 applies instead of 49 U.S.C. § 11343, the preemption clause of 49 U.S.C. § 11341(a) would be inapplicable, and

Minnesota law would continue to apply to this transaction.

**3.** Dormancy is a doctrine by which a transportation authority which has not been used may not be transferred if the transfer would result in new service to an area already adequately served by existing carriers.

ed to consolidations or mergers of two or more carriers, and cannot cover a mere transfer of operating authority. Section 11343(a)(2) grants the ICC exclusive jurisdiction over "a purchase, lease, or contract to operate property of another carrier by any number of carriers." The MTRB argues that the statute's use of commas and its failure to use the preposition "of" after "purchase" and "lease" show a clear congressional intent that the statute should cover a "purchase of another carrier" and not a mere "purchase of property of another carrier."

This argument is refuted by reference to the predecessor statute of § 11343. Both parties acknowledge that the recodification of § 11343 in 1978[4] did not change the substance or meaning of that section. Before the recodification, 49 U.S.C. § 5(2)(a)(i), the predecessor of § 11343(a)(2), provided that:

[i]t shall be lawful, with the approval and authorization of the [ICC], as provided in subsection (b) of this paragraph—

(i) ... for any carrier, or two or more carriers jointly, to purchase, lease, or contract to operate the properties, or any part thereof, of another;

The wording of § 5(2) suggests that the omission of the word "of" in § 11343(a)(2) carries no meaning. Congress changed the subject of the sentence from the purchaser to the transaction, and inadvertently failed to add the word "of."

The MTRB also points to the title of section 11343—"Consolidation, merger, and acquisition of control"—and to the title of

Subchapter III (49 U.S.C. §§ 11341–11351)—"Combinations"—to prove that § 11343(a)(2) should be limited to transactions involving consolidations of carriers. This argument is unavailing. Section and subchapter titles cannot alter the plain meaning of a statute; they can only assist in clarifying ambiguity. *Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528–29, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947).[5] While the title shows that most § 11343 transactions involve consolidations, mergers, and acquisitions, subsection 11343(a)(6), for example, demonstrates that the scope of § 11343 is not strictly limited to such transactions. Subsection 11343(a)(6) gives the ICC exclusive jurisdiction over an "acquisition by a rail carrier of trackage rights over, or joint ownership in or joint use of, a railroad line (and terminals incidental to it) owned or operated by another rail carrier." Under that subsection, a transaction involving the transfer of one railroad line, which is not a "consolidation, merger, or acquisition of control," qualifies as a § 11343 transaction. Therefore, it cannot be said, based on the section title, that § 11343(a)(2) must be limited to consolidation transactions.

The MTRB next argues that the legislative history of § 11343 shows that Congress intended that section, formerly § 5(2), to apply only to consolidations. The MTRB points to the Supreme Court's statement in *County of Marin* that the intent of § 5(2) "was to facilitate merger and consolidation in the national transportation system." 356 U.S. at 416, 78 S.Ct. at 883

4. *See* Pub.L. 95–473, 92 Stat. 1337 (1978).

5. The Supreme Court discussed fully the effect of section titles on statutory interpretation:

That the heading of [the section] fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact. That heading is but a shorthand reference to the general subject matter involved.... [H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as use-

less. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning of the text. For interpretive purposes, *they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt.* But they cannot undo or limit that which the text makes plain.

*Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R.,* 331 U.S. 519, 528–29, 67 S.Ct. 1387, 1392, 91 L.Ed. 1646 (1947) (citations omitted, emphasis added).

(*citing* S.Rep. No. 433, 76th Cong., 1st Sess. 28–32; H.R.Rep. No. 1217, 76th Cong. 1st Sess. 6, 12, 17; H.R.Rep. No. 2016, 76th Cong., 3d Sess. 61; H.R.Rep. No. 2832, 76th Cong., 3d Sess. 68–69). The ICC counters that the legislative history supports a broad reading of § 11343(a)(2), citing Senator Wheeler's statement that what is now § 11343 "confers on the [ICC] jurisdiction over *all* consolidations, mergers, *purchases*, leases, operating agreements and acquisitions of control through stock ownership where two or more motor carriers are involved." 79 Cong.Rec. 5655 (1935) (emphasis added). Neither party has pointed to any direct legislative history either supporting or undermining the position that § 11343(a)(2) is inapplicable to non-consolidation transactions. Thus, the legislative history does not aid in construing this statute.

The MTRB argues that transactions such as the present one, which involve transfers of operating authority, should be covered by 49 U.S.C. § 10926 (49 U.S.C. § 312(b) before the 1978 recodification), instead of § 11343. Section 10926 governs transfers of certificates and permits. The Supreme Court discussed the relationship between § 10926 and § 11343 in *County of Marin.* That case involved a transfer by Pacific Greyhound Lines of its San Francisco area operations to a Pacific Greyhound wholly-owned subsidiary set up specifically for purposes of consummating the transfer. 356 U.S. at 413, 78 S.Ct. at 881. The ICC had attempted to apply § 5(2) to that transfer. The Supreme Court held that because the subsidiary was not a "carrier," § 5(2)(a) did not apply. Instead, the Court held that § 312(b) would apply to the transfer of interstate rights, and state and local regu-

lation would control the transfer of intrastate authority. *Id.* at 420, 78 S.Ct. at 884.

The MTRB argues that just as the Supreme Court disallowed the ICC's expansive reading of § 5(2) in *County of Marin*, this court should disallow the ICC's expansive reading of the same provision here. However, we do not agree that merely because the Court held that the term "carrier" should not be read expansively, the ICC's reading of § 11343(a)(2) is too broad in this instance.[6]

The parties dispute the novelty of the ICC's interpretation of § 11343(a)(2), recognizing that a relatively new administrative interpretation of a sixty-year old statute would not be entitled to as much deference as an administrative interpretation of long standing. The ICC argues that for more than fifty years the term "property" in § 11343(a)(2) and its predecessor has included the purchase of operating authority and other property. *See, e.g., Bowman Transportation, Inc. v. United States,* 308 F.Supp. 1342 (N.D.Ala.1970) (*Bowman*); *Willett v. United States,* 79 F.Supp. 854 (W.D.La.1948); *Yellow Truck Lines, Inc.—Purchase—F & H Truck Lines, Inc.,* 35 M.C.C. 773 (1940).

The MTRB argues that until 1991, neither the ICC nor any court had held § 11343(a)(2) applicable to a transaction not involving a consolidation.[7] We disagree. First, although most of the cases applying § 11343(a)(2) did involve consolidations, *Bowman* involved a pure acquisition of property. In that case, Mercury Freight Lines wished to purchase a portion of the operating authority belonging to Alabama–Georgia Express (AGE) for $600,000. 308 F.Supp. at 1344. The three-judge district

---

**6.** Contrary to the argument of the MTRB, the ICC's interpretation of § 11343 does not make § 10926 superfluous. Section 10926 is still applicable to those transactions involving transfers of interstate authority which are not covered by § 11343, for example, transactions involving less than $2 million and transactions involving a non-carrier. *See* 49 U.S.C. § 11343(d)(1); *County of Marin v. United States,* 356 U.S. 412, 418, 78 S.Ct. 880, 883–84, 2 L.Ed.2d 879 (1958).

**7.** Even if the application of § 11343(a)(2) to non-consolidation transactions is not new, it is

clear that sometime in early 1991, the ICC rediscovered that application and decided to use it often to exempt non-consolidation transactions from both state and federal regulation pursuant to § 11343(e). *See Washington Trucking, Inc. Purchase (Portion) Exemption—Maddox Transfer & Storage, Inc.,* 7 I.C.C.2d 371 (1991); *Averitt Express, Inc.—Purchase (Portion) Exemption—Deaton, Inc.,* 7 I.C.C.2d 634 (1991); *Retzlaff Bros, Inc.—Purchase Exemption—Best Refrigerated Express, Inc. & Betts Trucking Co.,* No. MC–F–19766 (I.C.C. Sept. 10, 1991).

court held that the ICC could properly approve the sale of only a portion of AGE's authority pursuant to § 5(2)(a).[8] *Id.* at 1345. *Bowman* thus supports the ICC's interpretation of § 11343(a)(2). Second, no matter what the fact situations of these cases, they do show that courts have considered § 11343(a)(2), or its predecessor, applicable to a "purchase of property" and have read that section as the ICC does here.[9] Even if these statements are mere dicta, they contradict the MTRB's argument that the ICC's interpretation is wholly novel. The MTRB has been unable to point to any case which has specifically held that § 11343(a)(2) or its predecessor does *not* apply to non-consolidation transactions.

We hold that the ICC's interpretation is supported by the text of § 11343(a)(2), and find no abuse of discretion in the ICC's holding that § 11343(a)(2) applies to a "purchase of property of another carrier." As the District of Columbia Circuit recently noted:

> Despite the exact phrasing of § 11343(a)(2), in which the word "property" functions as the direct object only of the infinitive "to operate," it is well-settled that § 11343(a)(2) encompasses acquisitions of *assets* (a "purchase" of "property of another carrier") as well as acquisitions of *equity* (a "purchase . . . of another carrier").

*Redden v. I.C.C.*, 956 F.2d 302, 304 n. 2 (D.C.Cir.1992) (emphasis in text).[10]

ICC's LIMITING OF ISSUES TO BE CONSIDERED

Because § 11343(a)(2) applies to this transaction, the ICC has the authority to exempt it from regulation pursuant to 49 U.S.C. § 11343(e). Section 11343(e)(1)(A) authorizes the ICC to exempt "a person, class of persons, transaction, or class of transactions" from the regulatory provisions governing these transactions only if the ICC finds that "the application of such provisions is not necessary to carry out the transportation policy of section 10101 of this title." The MTRB argues that the ICC insufficiently addressed the National Transportation Policy (NTP) in granting Herman and Thompson an exemption. Specifically, the MTRB argues that the ICC has disregarded 49 U.S.C. § 10101(a)(1)(E), which makes it the policy of the federal government "to cooperate with each State and the officials of each State on transportation matters."

However, the ICC's actions in addressing the NTP should not be measured at the time of the granting of the Herman–Thompson exemption. This exemption was granted pursuant to the procedures set forth in *Exemption of Certain Transactions under 49 U.S.C. 11343*, 133 M.C.C. 449 (1984) (*Exemption*), in which the ICC exempted the entire class of § 11343 transactions. In *Exemption*, the ICC addressed the NTP, and determined that the only issues which need be addressed on a case-by-case basis are those of competition and employee protection. Thus, challenges to specific proposed exemptions are limited to those issues. By challenging the ICC's authority to refuse to hear issues not permitted by *Exemption*, the MTRB is actually challenging the ICC's authority to exempt all § 11343 transactions with a single class exemption and its authority to limit the issues which an opponent of a specific exemption may raise.

8. The dispute in *Bowman* actually involved a restriction in the certificates that AGE's regular and irregular authorities had to be transferred together. The court held that AGE could transfer parts of both its regular and irregular authority, so long as the two parts were sold together. Thus, it appears that no party in *Bowman* contended that a consolidation was required for § 5(2) to be applicable.

9. In fact, in *Willett v. United States*, 79 F.Supp. 854 (W.D.La.1948), the court specifically stated

that the term "properties" in § 5(2)(a) "certainly included the physical or tangible assets, such as . . . certificates of authority to operate within fixed areas." *Id.* at 859.

10. The opinion in *Redden* was written by Supreme Court Justice Thomas, who was a Circuit Judge with the Court of Appeals for the District of Columbia Circuit when the case was briefed and argued. He filed the opinion in his capacity as Circuit Justice pursuant to 28 U.S.C. § 43(b).

■ The ICC's action in adopting *Exemption* constitutes informal rulemaking under 5 U.S.C. § 553. We may set aside the decision of the ICC if we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). *See also Middlewest Motor Freight Bureau v. ICC,* 867 F.2d 458, 460 (8th Cir.1989).

■ In § 11343(e), Congress specifically authorized the ICC to exempt "a class of transactions." *Exemption* was intended to create "a class exemption under 49 U.S.C. §· 11343(e) for motor finance transactions subject to regulation under 49 U.S.C. §§ 11343(a)(1)–(5), between motor carriers of property and between such carriers and noncarriers." 133 M.C.C. at 449 (footnote omitted). The question remains whether the authorization in § 11343(e) allows the ICC to use a class exemption to exempt *all* § 11343 transactions from regulation and provide the rules for obtaining such exemptions. *See* Paul S. Dempsey, *Antitrust Law and Policy in Transportation: Monopoly i$ the Name of the Game,* 21 Ga. L.Rev. 505, 575 n. 390 (1987) ("The ICC's interpretation transforms Congress' limited exemption provision into a general policy of non-regulation.").

Congress enacted the exemption provision of § 11343(e) as a part of the Bus Regulatory Reform Act of 1982. Pub.L. 97–261, 96 Stat. 1122 (1982). The legislative history of § 11343(e) is discussed in *Regular Common Carrier Conference v. United States,* 820 F.2d 1323, 1327–29 (D.C.Cir.1987) (*RCCC*).[11] The exemption provision was proposed by former ICC chairman Reese Taylor in Senate hearings, where he stated:

We believe that it would be preferable to exempt bus companies and motor carriers generally from [ICC] jurisdiction with regard to mergers, consolidations and acquisitions of control. This change is suggested because we believe that other governmental bodies have sufficient jurisdiction to protect the public interest.

... [C]ontinued regulation by the [ICC] of control and acquisition transactions no longer appears necessary. Alternatively, Congress might wish to consider adoption of an exemption along the lines of the Staggers [Rail] Act [of 1980, Pub.L. No. 96–448, 94 Stat.1895], which could be used to exempt those types of transaction[s].

*RCCC,* 820 F.2d at 1327–28 (*quoting Deregulation of the Intercity Bus Industry: Hearings on H.R. 3663 Before the Subcomm. on Surface Transportation of the Senate Comm. on Commerce, Science and Transportation,* 97th Cong., 2d Sess. 88 (1982)). Chairman Taylor repeated these recommendations to the House committee reviewing this matter. *RCCC,* 820 F.2d at 1328 (*citing* Letter from Reese H. Taylor, Jr., Chairman, ICC, to Hon. James J. Howard, Chairman, House Comm. on Public Works and Transportation (June 8, 1982)).

Clearly, the ICC's primary goal in 1982 was the elimination of federal regulation of truck mergers. The exemption procedure adopted by Congress in § 11343(e) was propounded as an alternative. The MTRB argues that in *Exemption,* the ICC has done through administrative rulemaking what it could not convince Congress to do by statute—exempt all truck mergers from regulatory authority.[12]

**11.** In *Regular Common Carrier Conference v. United States,* 820 F.2d 1323 (D.C.Cir.1987), the District of Columbia Circuit held that the ICC was incorrect in applying § 11343(e) to exempt intermodal (rail-motor) transactions. The court held that § 11343(e) does not repeal by implication 49 U.S.C. § 10505, which is specifically applicable to exemptions of intermodal transactions. The MTRB argues that because the court in *RCCC* reversed the ICC's expansive reading of § 11343(e), we should do so here. We decline to draw this connection for the same reasons cited in the discussion of *County of Marin v.*

*United States,* 356 U.S. 412, 78 S.Ct. 880, 2 L.Ed.2d 879 (1958), above.

**12.** Chairman Taylor's original proposal to exempt truck mergers from federal regulation was based on a belief "that other governmental bodies have sufficient jurisdiction to protect the public interest." *RCCC,* 820 F.2d at 1327. Thus, the MTRB argues that state regulation should apply to exempted transactions. However, Congress specifically made § 11343(e) exemptions subject to § 11341(a), which expressly provides that exempted transactions are also exempt "from all other law, including State and munici-

We do not agree that the ICC's exemption of all motor carrier finance transactions is arbitrary, capricious, or an abuse of discretion. The fact that Congress chose to adopt Chairman Taylor's second alternative does not imply that the ICC's use of the statute to gain a result similar to that of the first alternative is necessarily improper. Congress specifically authorized the ICC to exempt "a class of transactions" and did not limit that authorization. We therefore hold that, if the procedures adopted in the class exemption are consistent with the requirements of § 11343(e), the ICC was within its discretion to exempt the entire class of motor carrier transactions.

Section 11343(e)(1)(A) requires the ICC to consider the NTP in granting an exemption. In *Exemption,* the ICC found that the proposed class exemption was consistent with the NTP. The ICC focused on the requirements of 49 U.S.C. § 10101(a) (the Rail Transportation Policy (RTP)), which sets forth general transportation policy objectives related to promoting competition, efficiency, productive use of resources, and safety. The ICC found that the class exemption would further the NTP by reducing regulatory barriers to entry, reducing industry costs, improving carrier efficiency, and increasing the level of industry competition. 133 M.C.C. at 453–54. Among the aspects of the NTP not directly addressed by the ICC in *Exemption* is the policy goal of federal-state comity provided in § 10101(a)(1)(E). The MTRB argues that the Commission's failure to expressly consider comity is an abuse of discretion.

It is well-settled in the area of rail transactions that the ICC need not consider all aspects of the RTP when it reviews a request for an exemption. As the court stated in *Illinois Commerce Comm'n v. ICC,* 787 F.2d 616, 627 (D.C.Cir.1986) (footnotes omitted):

> It is the [ICC's] responsibility to make sure that application of the statutory provision from which a transaction is ex-

empted is unnecessary to effectuation of that policy. This does not necessarily mean that the [ICC] must address each and every one of the policy's fifteen components, for some may be completely unrelated to the exemption. It does mean, however, that the [ICC] must consider all aspects of the policy bearing on the propriety of the exemption and must supply an acceptable rationale therefor.

The MTRB notes that in *Illinois Commerce Comm'n,* the court held that the ICC had abused its discretion by, in part, not considering fully 49 U.S.C. § 10101a(9), the RTP's provision on federal-state comity and the counterpart to § 10101(a)(1)(E) of the NTP. *Id.* at 631. In that case, however, at least ten states or state agencies filed comments in response to the ICC proposal in question.[13] *Id.* at 624 n. 47, 631 n. 113. In *Exemption,* by contrast, none of the commentors to the proposed class exemption were states, and presumably, none of the commentors raised the issue of comity. *See* 133 M.C.C. at 450 (listing commentors). Thus, unlike the situation in *Illinois Commerce Comm'n,* the question of federal-state comity was not before the ICC in *Exemption* and the ICC did not need to discuss the issue before granting the class exemption.

■ We hold that the ICC, in granting an exemption, whether of a class or of an individual transaction, need only consider those aspects of the NTP which are relevant to the transaction in question. This rule, developed in situations involving rail transaction exemptions, is equally applicable to motor carrier transaction exemptions. After all, if this were not the case, "the exemption process would [be] broader and possibly more onerous than the proceeding from which exemption was sought." *Village of Palestine v. ICC,* 936 F.2d 1335, 1339 (D.C.Cir.1991).

■ Finally, we reach the question of whether the ICC's decision in *Exemption* to limit the issues addressable on a case-by-

---

pal law, as necessary to let that person carry out the transaction...."

**13.** The ICC sought to exempt from regulation abandonments of rail lines that had been out of service for two years or more.

case basis to those of competition and employee relations was arbitrary, capricious, or an abuse of discretion. We hold that it was not. The ICC's decision to allow comments regarding a transaction's competitive aspects in individual applications for exemption was necessary to ensure that "either (i) the transaction is of limited scope, or (ii) the application of [regulatory] provisions is not needed to protect shippers from the abuse of market power." 49 U.S.C. § 11343(e)(1)(B). No other finding is statutorily required. Therefore, the ICC correctly held that the dormancy issue raised by the MTRB is irrelevant.

Because the MTRB did not raise any issue relevant under *Exemption* to the granting or revoking of the Herman–Thompson exemption, the ICC was within its discretion in denying the MTRB's petition to reopen the proceedings. We affirm.