# United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**

_____

No. 97-1848
_____

City of Ottumwa; Patrick C. Hendricks;     *
Joseph C. Szabo,     *
    *
       Petitioners,     *
   v.     *
    *
Surface Transportation Board; United     *
States of America,     *
    *
       Respondents,     *
    *
I & M Rail Link, LLC; Soo Line     *
Railroad Company,     *
    *
       Intervenor on Appeal.

| | |
|---|---|
| _____ | On Petition for Review |
| | Of an Order of the Surface |
| No. 97-2211 | Transportation Board. |
| _____ | |

United Transportation Union,     *
    *
       Petitioner,     *
    *
   v.     *
    *
Surface Transportation Board; United     *
States of America,     *
    *

Respondents,                        *
                                    *
I & M Rail Link, LLC; Soo Line      *
Railroad Company, d/b/a Canadian    *
Pacific Railway,                    *
                                    *
        Intervenor on Appeal.       *


_____

No. 98-1369
_____

City of Ottumwa; Patrick C. Hendricks;   *
Joseph C. Szabo,                         *
                                         *
                Petitioners,             *
        v.                               *
                                         *
Surface Transportation Board; United     *
States of America,                       *
                                         *
                Respondents,             *
                                         *
Soo Line Railroad Company; I & M         *
Rail Link, LLC; United Transportation    *
Union,                                   *
                                         *
        Intervenor on Appeal.            *

_____

No. 98-1507

_____

United Transportation Union,         \*

                                    \*

                                    \*

             Petitioner,          \*

    v.                                \*

                                    \*

Surface Transportation Board; United   \*

States of America,                \*

                                    \*

            Respondents.      \*

                                    \*

Soo Line Railroad Company;       \*

                                    \*

        Intervenor on Appeal.    \*

_____

Submitted:  February 11, 1998

Filed:   August 20, 1998

_____

Before FAGG, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

In this consolidated case, the City of Ottumwa, et al., and the United Transportation Union seek review of several related orders issued by the Surface

Transportation Board[1] concerning I&M Rail Link's purchase of railroad line and trackage rights from Soo Line Railroad Co., d/b/a Canadian Pacific Railway. For the reasons set forth below, we deny Ottumwa's and United's petitions for review.[2]

Dennis Washington created a non-carrier corporation, I&M Rail Link, to acquire from Soo certain rail lines (KC Mainline and Corn Line) and related trackage rights in Iowa, Illinois, Minnesota, Missouri, Wisconsin, and Kansas. On January 14, 1997, I&M filed a verified notice of exemption under the Board's non-carrier class exemption (49 C.F.R. §§ 1150.31-35 (1997)) to exempt its proposed acquisition of Soo's rail lines and trackage rights from the regulatory requirements of 49 U.S.C. § 10901 (1994).

Because Washington already owned a controlling interest in another railroad, Montana Rail Link, Washington filed a notice of exemption under the Board's non-connecting carrier class exemption (49 C.F.R. § 1180.2(d)(2) (1997)) to exempt his proposed control of Montana Rail Link and I&M from the regulatory requirements of 49 U.S.C. § 11323 (1994).[3]

---

[1]The ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803 (1995), abolished the Interstate Commerce Commission and transferred certain rail functions to the Surface Transportation Board.

[2]The day before argument in these cases, we ordered that 98-1369 be consolidated with 97-1848 and 97-2211. After argument, on February 26, 1998, United Transportation Union also filed a Petition for Review directed to the Board's order in Finance docket No. 33350, entered February 3, 1998, the same order that was under review in 98-1369. The Board suggested consolidating and Soo Line filed a Motion to Consolidate and Intervene. All of the parties briefed the issues concerning Finance docket No. 33350 in 98-1369. Accordingly, we grant the Motion to Consolidate and the Motion to Intervene.

[3]Montana Rail Link also filed a notice of exemption under 49 C.F.R. 1180.2(d)(2), seeking authority to control I&M following consummation of the I&M acquisition transaction. However, Montana Rail Link simultaneously filed a motion

Both Ottumwa and United petitioned the Board to revoke I&M's non-carrier class exemption and Washington's non-connecting carrier class exemption. On April 1, 1997, the Board denied the petitions to revoke and ordered the I&M acquisition exemption and the Washington control exemption to be effective April 4, 1997.

On April 3, 1997, Ottumwa requested a stay of the Board's April 1 decision pending judicial review, arguing primarily that the Board had to determine prior to the sale whether Soo would control I&M if it chose to exercise an option in the contract giving Soo the right to acquire up to a one-third interest in I&M. That option, if exercised, would allow Soo to appoint two of seven managers to I&M's board of managers. The Board, on that same day, denied the stay request.

In denying the petitions to revoke and the stay request, the Board declined to make a final ruling on the control issue until Soo actually exercised its purchase option.

On April 3, 1997, Soo exercised its option to acquire a one-third interest in I&M, and immediately placed those shares in a voting trust. On May 29, 1997, Soo filed a petition for a declaratory order requesting the Board to find that Soo's acquisition of a one-third interest in I&M does not require prior approval under, or exemption from, the carrier control provisions of 49 U.S.C. §§ 11323. The Board issued a procedural schedule permitting the parties to file additional evidence and argument on the control issue. On February 3, 1998, the Board issued a decision concluding that Soo's acquisition of a one-third ownership interest in I&M does not constitute control and does not require prior approval under 49 U.S.C. § 11323.

---

to dismiss its notice of exemption for control of I&M, asserting the Montana Rail Link/I&M relationship would be such that Montana Rail Link would not control I&M. The Board granted Montana Rail Link's motion to dismiss in its April 1, 1997, decision.

Both Ottumwa and United petition this court to review the Board's April 1, 1997, decision allowing the transfer of railroad line and trackage rights from Soo to I&M, as well as the Board's February 3, 1998, decision finding that Soo does not control I&M.

We first consider Ottumwa's and United's arguments directed at the Board's April 1, 1997, decision, and then consider their arguments directed at the Board's February 3, 1998, decision.

## I.

United argues that the Board erred in its April 1, 1997, decision (I&M Acquisition) finding that the trackage rights involved are "incidental" to the overall transaction. United argues that the trackage rights are not incidental to the overall transaction and therefore the Board should have required I&M to seek approval of the trackage rights in a separate proceeding. We reject United's argument.

Acquisitions of rail lines by a non-carrier are subject to the regulatory requirements of 49 U.S.C. § 10901.[4] A non-carrier may bypass the pre-approval requirements of 49 U.S.C. § 10901 by filing with the Board a notice of exemption under 49 C.F.R. §§ 1150.31-35. This exemption expressly includes the acquisition of "incidental" trackage rights in connection with a transaction under section 10901. 49 C.F.R. § 1150.31(a)(4). The Board concluded that the trackage rights I&M obtained from Soo are "incidental" trackage rights and considered them together with the railroad lines in denying United's petition to revoke the I&M acquisition exemption.

We will set aside the Board's finding that the trackage rights are incidental only

---

[4]Under this section, a "person other than a rail carrier" may acquire a railroad line only if the Board issues a certificate authorizing the acquisition. See 49 U.S.C. § 10901(a)(4).

if that finding is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.  5 U.S.C. § 706(2)(A) (1994).  The regulations state that: "[i]ncidental trackage rights include the grant of trackage rights by the seller, or the assignment of trackage rights to operate over the line of a third party that occur at the time of the exempt acquisition."  49 C.F.R. § 1150.31(a)(4).  The trackage rights at issue here were granted in conjunction with and facilitated the overall acquisition of the rail lines and thus fall squarely within the regulations' definition of incidental trackage rights.  See Indiana & Ohio Railway Company--Acquisition Exemption--Lines of the Grand Trunk Western Railroad Inc., STB Finance Docket No. 33180, 1997 WL 40912, *5 (I.C.C., Feb 3, 1997 ).  The Board concluded that the trackage rights I&M obtained from Soo "are incidental because they are related to the sale of the Main System line segments, the KC Mainline and the Corn Lines."  The Board did not abuse its discretion in classifying the trackage rights as incidental trackage rights, nor was its decision arbitrary, capricious, or otherwise not in accordance with the law.

United also argues that the Board was arbitrary and capricious in failing to rule in its April 1, 1997, decision whether Soo's option to acquire up to a one-third interest in I&M would cause Soo to control I&M.  United argues that the Board had no reasonable basis to defer this determination to a later declaratory order proceeding. This argument is without merit.

In its notice of exemption, I&M advised the Board that I&M was granting Soo the option to acquire up to a one-third interest in I&M which would allow Soo to appoint two of seven directors to I&M's board of directors.  In deferring the minority control issue, the Board noted that before attempting to exercise the purchase option Soo would seek a declaratory order indicating that its ownership would not constitute control of I&M.  Pending that determination, Soo would place the one-third interest in a voting trust.  The Board said that it would:

evaluate the implications of [Soo's] minority interest at such time as [Soo]

institutes a declaratory order proceeding; and, if we determine that such an interest, either alone or in combination with other factors, would allow [Soo] to control I&M, [Soo] will be required to divest itself of that interest or obtain authority from us to exercise that control.

The purchase agreement further provided that if the Board determined that the interest would cause Soo to control I&M, then Soo would return the shares to I&M.

Given this setting, the Board was well within its discretion in deferring the issue until such time as Soo actually exercised the purchase option. At the time of the April 1 decision, neither Soo nor I&M proposed to take any action that required immediate resolution of the purchase option issue. The Board was not required to make a finding on whether Soo, by owning a minority interest in I&M, would control I&M before Soo even chose to exercise the option. Furthermore, the independent voting trust[5] arrangement prevented Soo from holding the shares without first obtaining a determination that purchasing a one-third minority interest in I&M would not cause Soo to control I&M. We conclude the Board did not err in deferring the issue.

Lastly, Ottumwa argues that the Board has failed to render an analysis of the relevant Rail Transportation Policy factors in ruling to deny its petition to revoke I&M's non-carrier class exemption. Ottumwa argues that because the Board did not make any specific findings concerning the fifteen criteria set forth in the Rail Transportation Policy, its decision to deny Ottumwa's petition to revoke cannot stand. We reject this argument.

---

[5]The Board's regulations contain express provisions authorizing the use of a voting trust in order to avoid an unlawful control violation. See 49 C.F.R. §§ 1013.1-1013.3.

Under 49 U.S.C. § 10502(d), the Board may revoke an exemption when "necessary to carry out the transportation policy of section 10101." Section 10101, the Rail Transportation Policy, sets forth general transportation policy objectives related to promoting competition, efficiency, productive use of resources, and safety. 49 U.S.C. § 10101; see Minnesota Transportation Regulation Board v. United States, 966 F.2d 335, 343 (8th Cir. 1992). The Policy also explicitly states that it is the policy of the United States Government to "minimize the need for Federal regulatory control over the rail transportation system." 49 U.S.C. §10101 (2).

In its decision, the Board specifically noted that the proper inquiry when evaluating a petition to revoke an exemption is whether regulation of the transaction is necessary to carry out the Policy, focusing on the sections of the Policy related to the underlying statutory section from which the exemption is sought. See Village of Palestine v. I.C.C., 936 F.2d 1335, 1338-39 (D.C. Cir. 1991); Winter v. I.C.C., 992 F.2d 824, 825-26 (8th Cir. 1993). The Board then concluded, without discussing any specific section of the Policy, that "Because we find . . . Ottumwa [has] failed to demonstrate that the I&M acquisition . . . should be revoked, we will deny the petition[] to revoke."

Village of Palestine and Winter make clear that the Board is not required to review each section of the Policy. Furthermore, we conclude that the Board was not required to make specific findings on certain sections of the Policy in a case such as this one where, in exempting the entire non-carrier class from the prior approval requirements of 49 U.S.C. § 10901, the Interstate Commerce Commission found that the proposed class exemption was consistent with the Policy, and that these

transactions generally do not require regulation to implement the Policy.  See Class Exemption--Acq.--& Oper. of R. Lines Under 49 U.S.C. 10901, 1 I.C.C. 2d 810 (Dec. 19, 1985) (Class Exemption), aff'd Illinois Commerce Com'n v. I.C.C., 817 F.2d 145 (D.C. Cir. 1987); see also Minnesota, 966 F.2d at 341.  This is particularly so because, to obtain revocation of an exemption, the burden of proof was on Ottumwa to show that regulation was required to carry out the Policy.  See CSX Transp., Inc. -- Aban. -- in Randolph County, WV, 9 I.C.C.2d 447, 449 (1992);  Minnesota Commercial Ry. -- Trackage Rights Exempt. -- Burlington Northern R.R., 8 I.C.C. 2d 31, 35 (1991), aff'd Winter v. I.C.C., 992 F.2d 824 (8th Cir. 1993).  Here, the Board concluded that Ottumwa failed to satisfy this burden.  We have reviewed the record and conclude that the Board did not abuse its discretion in so holding.

For the reasons set forth above, we affirm the Board's April 1, 1997 decision denying Ottumwa's and United's petitions to revoke, and accordingly deny their related petitions for review.

## II.

We now turn our attention to Ottumwa's and United's petitions to review the Board's February 3, 1998, declaratory ruling that Soo's acquisition of a one-third ownership interest in I&M does not cause Soo to control I&M.

As stated earlier, in the Board's April 1 decision regarding the I&M acquisition exemption (I&M Acquisition), the Board stated that it would evaluate the control implications of Soo's minority interest in I&M after Soo exercised the option and

instituted a declaratory order proceeding.

Soo exercised its option on April 3, 1997, immediately placed the shares in a voting trust, and on May 29, 1997, filed a petition for a declaratory order requesting the Board to find that Soo's acquisition does not require prior approval under, or exemption from, the carrier control provisions of 49 U.S.C. §§ 11323.  On February 3, 1998, the Board issued a decision concluding that Soo's acquisition of a one-third ownership interest in I&M does not constitute control and therefore does not require pre-approval under 49 U.S.C. § 11323.

Ottumwa argues that the Board's bifurcation of the I&M acquisition transaction and the Soo minority interest transaction resulted in a "deficient record" and "woefully inadequate findings."  To support this contention, Ottumwa alleges that the Board erred by finding in the February 3 declaratory order decision that it had previously considered and rejected in I&M Acquisition Ottumwa's claims regarding the Operating Agreement.

Apparently, Ottumwa is arguing that the record and findings are deficient because in I&M Acquisition the Board indicated it was deferring consideration of the Operating Agreement until the declaratory order proceeding.  Then in its February 3 declaratory order decision, the Board stated, "In I&M Acquisition, we rejected claims by [United] and Ottumwa that the marketing and operating agreements would give Soo the power to control I&M."  Thus, Ottumwa argues that the Board never properly considered the terms of the Operating Agreement in deciding the issue of whether Soo would control I&M after exercising its purchase option.  This argument is entirely without merit.

-11-

In its Petition for Declaratory Order, Soo submitted to the Board a copy of the Operating Agreement. The Board specifically dealt with the relevant provisions of the Operating Agreement throughout the entire declaratory order decision, and made repeated capitalized references to the "Operating Agreement."[6] Furthermore, a comprehensive reading of I&M Acquisition and the declaratory order decision makes clear that when the Board stated that in I&M Acquisition it had rejected claims that "the marketing and operating agreements would give Soo the power to control I&M," the Board was discussing various commercial arrangements (e.g., divisions agreement, marketing agreements, etc.) between I&M and Soo that the Board had already considered in I&M Acquisition. Although the Board used the phrase "operating agreements," it was not referring to the "I&M Operating Agreement" which, among other things, spells out the terms for Soo's exercise of its option to purchase a one-third interest in I&M. The Board properly considered the Operating Agreement in its February 3 decision and developed a sufficient record on the issue.

Ottumwa also argues that the Board erred "in finding an absence of record support for [Soo]-Dennis Washington/MRL joint control of I&M" and that the Board erred "in placing almost exclusive emphasis on control over day-to-day operations." We reject these arguments.

Control is defined as "actual control, legal control, and the power to exercise

---

[6]We will not catalogue the numerous references the Board made to the Operating Agreement in its decision. Suffice it to say the Board thoroughly considered, and rejected, Ottumwa's claims concerning the Operating Agreement. See STB Finance Docket No. 33350, Soo Line Railroad Company--Petition for Declaratory Order, 1998 WL 43797 (I.C.C., February 3, 1998).

control through or by (A) common directors, officers, stockholders, a voting trust, or a holding or investment company, or (B) any other means." 49 U.S.C. § 10102(3). The existence of control is an issue of fact to be determined by the circumstances of each case. See Rochester Telephone Corp. v. United States, 307 U.S. 125, 145-46 (1939). The Board's determinations concerning questions of control are entitled to great deference and will not be overturned unless the decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(a); see Chevron, U.S.A. v. NRDC, Inc., 467 U.S. 837, 842-43 (1984).

After reviewing the Board's decision, we conclude the Board did not err in concluding that Soo, either alone or in conjunction with Montana Rail Link, would not control I&M. Contrary to Ottumwa's assertions, the Board did not exclusively rely on Soo's ability to control the day-to-day operations of I&M. The Board reviewed the arrangements in place between Soo and I&M and concluded that I&M is controlled solely by its majority owner, Dennis Washington. The Board noted that Dennis Washington has the power to appoint five of the seven members of I&M's board, and that the board has the sole right and authority to manage, control and make all decisions affecting the business of I&M. The Board also considered the minority protections afforded Soo in the Operating Agreement and concluded that these provisions merely protect Soo's economic position. Ottumwa has not identified any facts that would lead us to conclude the Board abused its discretion in reaching these conclusions.

Ottumwa and United raise various other arguments attacking the Board's February 3, 1998, decision. We have considered these arguments and conclude that they are without merit. Accordingly, for the reasons set forth above, we affirm the

Board's February 3, 1998, decision and deny Ottumwa's and United's related petitions for review.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.